2001-NMCA-099

34 P.3d 643

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jake MARTINEZ, Defendant–Appellant.**

**No. 21,861.**

Court of Appeals of New Mexico.

Oct. 16, 2001.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

WECHSLER, Judge.

{1} Defendant Jake Martinez appeals his conviction of fraudulent use of a credit card in violation of NMSA 1978, § 30–16–33 (1971). There was evidence at trial that Defendant had used a stolen electronic benefits transfer (EBT) card issued to a public assistance recipient at a grocery store. Defendant contends that the EBT card is not a credit card as defined in NMSA 1978, § 30–16–25(B) (1999) and that, therefore, there was insufficient evidence to support his conviction. Alternatively, Defendant argues that his conviction should be reversed because he was charged under a general, rath-

er than a specific, statute concerning the criminal activity. We agree with Defendant that the EBT card is not a credit card under Section 30–16–33 and therefore reverse.

*Definition of "Credit Card" in Section 30–16–25(B)*

{2} Section 30–16–33(A)(4) prohibits the use of someone else's credit card without consent to obtain something of value with the intent to defraud. "Credit card" is defined in Section 30–16–25(B)(1) as

> any instrument or device, whether known as a credit card, credit plate, charge card or by any other name, issued with or without fee by an issuer for the use of the cardholder in obtaining money, goods, services or anything else of value, either on credit or in consideration of an undertaking or guarantee by the issuer of the payment of a check drawn by the cardholder.

*EBT Food Purchase System*

{3} At trial, a vice president of Citicorp Financial Services Inc. (Citicorp) testified concerning the State of New Mexico's use of the EBT card system to enable cardholders who are clients of the State Income Support Division to purchase food at certified grocery stores. The Citicorp representative testified that the EBT card system is federally funded and state administered and replaced food stamps in New Mexico in the mid to late 1980s. Under the EBT system, the Income Support Division determines income eligibility and allocates a monthly amount available to a client for food purchases on an EBT card at certified stores. The client is given an EBT card and personal identification number for identification. When the client, as a cardholder, makes a purchase and presents the card and enters the personal identification number, the store contacts Citicorp which has a contract with the State of New Mexico to facilitate the operation of the program. Citicorp stores information received from the State concerning the identification and monthly purchase allocation for cardholders in its computer system. It verifies the information received by the store against the information in its computer system. If the information received from the store

matches, Citicorp authorizes the purchase and reduces the balance of the available allocation on its record. At the conclusion of each business day, Citicorp settles all of the day's transactions. It pays the store by drawing on a letter of credit at the Federal Reserve Bank set up by the United States Treasury for Citicorp.

*Applicability of Section 30–16–25(B)*

{4} There is a layer of credit required to complete the transaction. The United States Treasury extends credit to Citicorp on behalf of the State of New Mexico for the payment of the merchants who sell food to Income Support Division clients. By that element of credit, the federal government funds the food purchases.

{5} The State contends that because the State of New Mexico is guaranteeing payment to the grocery store through the federal government's line of credit, the transaction was "on credit" so as to satisfy the definition of Section 30–16–25(B). Defendant would not have us read the statutory definition so broadly. As Defendant points out, the cardholder applies to the State for benefits, not for credit, and is never the guarantor of payment to the grocery store. According to Defendant, under the definition of "credit card" in Section 30–16–25(B), the cardholder did not have a credit relationship with anyone such that the purchase on the EBT card was "on credit."

{6} When we evaluate the meaning of a statute, we seek the legislative intent. *Draper v. Mountain States Mut. Cas. Co.,* 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994). We look to the plain meaning of the language used in the statute and the underlying legislative purpose. *See State v. Andrews,* 1997–NMCA–017, ¶ 5, 123 N.M. 95, 934 P.2d 289. We use the ordinary and plain meaning of statutory language unless the legislative intent indicates otherwise. *Draper,* 116 N.M. at 777, 867 P.2d at 1159. Statutory interpretation is a question of law that we review de novo. *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{7} Considering the language of Section 30–16–25(B) and the manner it is used, we

agree with Defendant that the State's interpretation is too broad because it construes "credit" in an overly broad manner and does not focus on the purpose of the statute. The statutory offense is fraudulent use of a "credit card," and Section 30–16–25(B) defines "credit card." Under the statutory definition contained in Section 30–16–25(D), an "issuer" issues a card to the cardholder so that the cardholder may use the card to obtain something of value on credit. We consider "on credit" to mean, in ordinary usage, the receipt of goods or money for payment in the future. *See* Webster's Third New International Dictionary 532 (unabridged, 1993) (defining "credit" in relevant part as "an amount or limit to the extent of which a person may receive goods or money for payment in the future").

{8} Thus, under usual circumstances, a cardholder, or one authorized by the cardholder, would use a credit card to make a purchase at a store and, by the nature of credit, be obligated to make payment in the future. Although the statutory definition of Section 30–16–25(B) does not specifically indicate that the credit relates to the cardholder, it also does not make any reference to any party other than the issuer and the cardholder. However, the nature of the definition, which describes a card issued to a cardholder for the cardholder's use, implies that it is the cardholder's credit that is involved.

{9} Moreover, rules of statutory construction require us to read statutes concerning the same subject matter together and to construe a statute in view of the harm it is designed to prevent. *State v. Ogden*, 118 N.M. 234, 243–44, 880 P.2d 845, 854–55 (1994). Although this statutory language could be read broadly as the State urges, we do not believe the legislature intended such a reading. Rather, when we read Section 30–16–25(B) with Section 30–16–33(A)(4), we believe that the legislature intended to protect against the injury to a cardholder when the cardholder's card is used without consent.

{10} Nor do we agree with the State's contention that its guarantee of payment to the grocery store fits within the Section 30–16–25(B) definition as a substitute for credit.

Under Section 30–16–25(B), a credit card may be issued so that the cardholder can use the card to obtain something of value in consideration of the issuer's guarantee to pay a check of the cardholder. However, the facts of this case do not involve the payment of any check so as to implicate this guarantee provision of the statute.

{11} We do not lose sight of the fact that the legislature intended to define a "credit card" in Section 30–16–25(B). In its ordinary usage, the term "credit card" does not include a card requiring the payment of the United States Treasury or involving governmental assistance benefits. We believe that including an EBT card (used to access federally funded benefits) within the definition of a credit card would be a stretch of common usage which was neither intended nor contemplated by the legislature.

*Amendment to Section 58–16–3(A)(9)*

{12} If there was any doubt about the legislative intent as to whether an EBT card was a credit card under Section 30–16–25(B), the legislature put it to rest in 1999 when it enacted amendments to the Remote Financial Service Units Act, NMSA 1978, §§ 58–16–1 to –18 (1990, as amended through 1999). The Remote Financial Service Units Act prohibits the unauthorized use of the card of another. Section 58–16–16(B). In 1999, the legislature defined "card" as "a plastic card or other instrument . . . issued by a financial institution or by a state agency to a cardholder that enables the cardholder to have access to and that processes transactions against one or more accounts." Section 58–16–3(A)(9). The statutory definition specifically states that the term "card" "shall be used when referring . . . to . . . an EBT card issued to a recipient of public assistance benefits." *Id.* In defining "card," Section 58–16–3(A)(9) lists separately its reference to "a credit card identifying a cardholder who has established a pre-approved credit line with the issuer of the credit card." By this definition of "card," the legislature made it clear that an EBT card issued for public assistance benefits is not a credit card and that both an EBT and a credit card fall within a broader definition of "card" used in connection with

financial services. *See* § 58–16–2 (stating generally purposes of the Remote Financial Service Units Act to include enhanced use of financial services). Section 58–16–16(B) covers the conduct alleged in the indictment in this case.

*Conclusion*

{13} Because the EBT card issued to a client of the Income Support Division does not fall within the definition of "credit card" in Section 30–16–25(B), we reverse Defendant's conviction.

{14} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, LYNN PICKARD, Judge.