Certiorari Denied, April 13, 2011, No. 32,913

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-046

Filing Date:  February 9, 2011

Docket No. 29,641

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

JAVIER J. CASTILLO,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY
Stephen K. Quinn, District Judge

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**VANZI, Judge.**

**{1}** Defendant was convicted of one count of theft of identity and four felony counts of violating the Remote Financial Service Unit Act (RFSUA), NMSA 1978, Section 58-16-16(B) (1990), after he used a stolen debit card to purchase and attempt to purchase goods at several retail stores.  Defendant appeals his convictions, arguing that he should have been charged with a single petty misdemeanor under the fraudulent use of a credit card statute,

1

NMSA 1978, Section 30-16-33(B) (2006), rather than being charged under RFSUA. Defendant also contends that his convictions are a violation of the Eighth Amendment and equal protection clauses of the United States Constitution and the New Mexico Constitution, that there is insufficient evidence that he fraudulently used the debit card, and that the rule of lenity should apply in this case. For the reasons that follow, we affirm.

**BACKGROUND**

{2}    Kathryn Sando's house was burglarized early one morning. Her purse and debit cards were among the items stolen from her home. One of the debit cards had Sando's name on it and was tied to her regular checking account, while the other was a temporary card which had "preferred customer" on it instead of a name and was tied to a different bank account.

{3}    On the same morning that the burglary took place, Defendant used the card which had the name "Kathryn Sando" on it to make $83 worth of purchases at two Allsup's Convenience Stores and at a Lowe's Hardware Store. He then attempted to make a purchase at Walgreens with the same card, but the card was declined after Defendant tried several different incorrect pin number combinations.

{4}    A Walgreens' manager notified police about the suspicious and unsuccessful transactions. He gave police a license plate number which led them to a car belonging to Defendant's girlfriend. Inside the car, police found an Allsup's receipt for a purchase made that morning with a debit card ending in the same four numbers as Sando's stolen card. Defendant was arrested and taken to the police station for questioning. After being read his *Miranda* rights, Defendant admitted that he used a card, that he was at two Allsup's stores and Walgreens, but he denied that he was involved in a burglary. Defendant also stated that he thought the card he used was a "debit card." Video recordings showing Defendant making the debit card transactions at the Allsup's stores, Lowe's, and Walgreens were admitted into evidence and played for the jury.

{5}    The jury found Defendant guilty of one count of theft of identity and four counts of violation of RFSUA. The district court sentenced Defendant to a term of eighteen months for each count in violation of the RFSUA for a total of six years. For the theft of identity violation, Defendant received an additional eighteen months, but he does not appeal that conviction. The district court suspended five-and-one-half years of Defendant's sentence, leaving a sentence of two years of incarceration for the five felonies.

{6}    Defendant appeals his RFSUA convictions, arguing that he was incorrectly charged and that his sentence is unconstitutional.

**DISCUSSION**

**Defendant Was Properly Charged With Fraudulent Use of a Debit Card Under RFSUA**

2

**{7}** Defendant contends that he was improperly convicted of four fourth degree felonies for violations of RFSUA when he would have been convicted of only a single petty misdemeanor if he had been charged with the same conduct under the fraudulent use of a credit card statute, § 30-16-33. Specifically, he argues that fraudulent use of a debit card can be punished under either statute because the debit card he used is a "credit card" within the meaning of Section 30-16-33. Therefore, he asserts that the Legislature must have intended that his actions be punished under Section 30-16-33. We disagree.

**{8}** The determination of whether a debit card is a credit card for purposes of Section 30-16-33 is an issue of statutory interpretation that we review de novo. *State v. Romero*, 2006-NMSC-039, ¶ 6, 140 N.M. 299, 142 P.3d 887. The primary purpose of statutory interpretation is to "to give effect to the intent of the [L]egislature." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We first look to the ordinary and plain meaning of the language of a statute, because the statutory text is "the primary indicator of legislative intent." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361.

**{9}** Section 30-16-33(B) provides that "[w]hoever commits fraudulent use of a credit card when the value of the property or service obtained is two hundred fifty dollars ($250) or less in any consecutive six-month period is guilty of a petty misdemeanor." For purposes of this section, a "credit card" is defined as

> any instrument or device, whether known as a credit card, credit plate, charge card or by any other name, issued with or without fee by an issuer for the use of the cardholder in obtaining money, goods, services or anything else of value, *either on credit or in consideration of an undertaking or guarantee by the issuer of the payment of a check drawn by the cardholder*[.]

NMSA 1978, § 30-16-25(B)(1) (1999) (emphasis added). We note that the plain language of the statute limits the application of Section 30-16-33 to those purchases made with a card "on credit" or those purchases made "in consideration of an undertaking or guarantee by the issuer of the payment of a check drawn by the cardholder." Section 30-16-25(B)(1).

**{10}** In *State v. Martinez*, 2001-NMCA-099, ¶ 7, 131 N.M. 254, 34 P.3d 643, we held the term "'on credit' to mean, in ordinary usage, the receipt of goods or money for payment in the future." In that case, the defendant used a stolen electronic benefits (EBT) card at a grocery store belonging to a public assistance recipient. *Id.* ¶ 1. The defendant argued that the EBT card is not a credit card as defined in Section 30-16-25(B) and, therefore, the evidence was insufficient to support his conviction. *Martinez*, 2001-NMCA-099, ¶ 1. We agreed, concluding that an EBT card was not a "credit card" for purposes of Section 30-16-33 because although a transaction with an EBT card has a "layer of credit" between the United States Treasury, the bank, and the State of New Mexico, the cardholder only accesses benefits and does not access a line of credit tied to the cardholder's promise to pay.

3

*Martinez*, 2001-NMCA-099, ¶¶ 4, 11. We also stated that because the facts of that case did not involve "the payment of any check," the transaction did not come within Section 30-16-33's definition of a credit card as an instrument to obtain something of value "in consideration of an undertaking or guarantee by the issuer of the payment of a check drawn by the cardholder." *Martinez*, 2001-NMCA-099, ¶¶ 2, 10 (internal quotation marks and citation omitted).

**{11}** In this case, evidence was presented that debit cards are tied to individual checking accounts, as opposed to lines of credit or guarantee of payment by the issuing bank. Sherry DeFoor, the banking manager at Bank of America, testified that a "debit card" is different from a "credit card" because a "credit card" relies on a line of credit. In contrast, a "debit card" is tied to the individual cardholder's checking account, and when the debit card is used, the money is taken directly out of that checking account. DeFoor further testified that the unauthorized use of Sando's "debit card" resulted in a direct deduction from Sando's available funds in her checking account.

**{12}** The bank is not lending any funds to Sando or guaranteeing any payment to a third party when she initiates a debit card transaction. Based on our reading of the plain language of Section 30-16-33, the holding in *Martinez*, and the evidence presented, we conclude that a "debit card" does not meet the statutory definition of a "credit card," and that the two terms cannot be used interchangeably in this case. Consequently, contrary to Defendant's assertion that he could have been charged under either statute, we determine that Defendant's use of Sando's debit card could only be charged under RFSUA and not under the fraudulent use of a credit card statute, § 30-16-33.

**{13}** Consistent with our analysis, the Washington Supreme Court interpreted a virtually identical state statute in the case of *Washington v. Standifer*, 750 P.2d 258 (Wash. 1988) (en banc). In *Standifer*, the issue was whether an ATM access card was a "credit card" for purposes of a statute prohibiting theft of a credit card. *Id.* at 259. That statute defined credit card in essentially the same manner as it is defined in Section 30-16-33. *Standifer*, 750 P.2d at 259. The court stated that it was clear that the card was not issued to obtain money on credit and that an ATM card did not fit the statutory language. *Id.* at 260. The court also considered the "guarantee" or "undertaking" provision and explained that

> [c]ommon experience indicates that this portion of the statute was intended to describe the card issued by a bank with which the holder can obtain money, goods or services from a seller or provider thereof in consideration of the issuer's promise to pay the seller or provider, then looking to the cardholder for payment.

*Id. Standifer* further supports our determination that Section 30-16-33 does not encompass the unauthorized use of a checking account debit card.

4

**{14}** Unlike Section 30-16-33, RFSUA contemplates prosecution specifically for the unauthorized use of a debit card. Section 58-16-16(B) provides that "[a]ny person who makes an unauthorized withdrawal from the account of another person with a financial institution, or who steals the card of another, or who makes an unauthorized use of the card of another is guilty of a fourth degree felony." For purposes of RFSUA, a "card" is defined as

> a plastic card or other instrument or any other access device issued by a financial institution or by a state agency to a cardholder that enables the cardholder to have access to and that processes transactions against one or more accounts, and the term shall be used when, referring to either an ATM access card, *a debit card*, a credit card identifying a cardholder who has established a pre-approved credit line with the issuer of the credit card or an EBT card issued to a recipient of public assistance benefits.

NMSA 1978, § 58-16-3(A)(9) (1999) (emphasis added).

**{15}** The plain language of this broader definition of a "card" refers to different types of cards and includes the statute's application to the use of a debit card, a credit card, or an EBT card, among others. Accordingly, we conclude that Defendant's use of a debit card was properly charged under RFSUA.

**{16}** Defendant next argues that Section 30-16-33 and RFSUA are in conflict and to resolve the conflict, we must apply the more specific, later-enacted Section 30-16-33. However, "[t]he general/specific statute rule only applies when two or more statutes have conflicting provisions concerning the same matter." *State v. Santillanes*, 2001-NMSC-018, ¶ 23, 130 N.M. 464, 27 P.3d 456 (internal quotation marks and citation omitted). Here, the statutes are not conflicting because, as we have discussed above, a debit card is not a "credit card" for purposes of Section 30-16-33. Thus, because only one statute—RFSUA—applies to the unauthorized use of a debit card, we cannot apply the general/specific rule when there are no conflicting provisions to interpret.

**{17}** Defendant further contends that the Legislature could not have intended that punishment for the unauthorized use of a debit card would be harsher than the unauthorized use of a credit card and, as a result, this Court should not be bound by "a formalistic and mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute." *See State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. We do not believe that our conclusion that debit cards are not credit cards for purposes of Section 30-16-33 leads to an absurd or unreasonable result.

**{18}** First, unlike the fraudulent use of a credit card, the fraudulent use of a debit card has immediate consequences for the victim as it causes the victim's checking account to be debited immediately. Furthermore, we agree that a person who commits fraudulent use of a debit card is guilty of a fourth-degree felony regardless of the amount involved. Section

5

58-16-16(B). However, punishment for a person who commits fraudulent use of a credit card can be far harsher depending on the amount of the transaction. *See* § 30-16-33(E), (F) (stating that a person who commits a fraudulent credit card transaction in an amount over $2500 is guilty of a third degree felony; if the amount is over $20,000, the person is guilty of a second degree felony). Our interpretation of the plain meaning of RFSUA comports with our principles of statutory construction. *See State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489 (stating that statutes should be read harmoniously whenever possible). Indeed, the separate penalty provisions of these statutes establishes that the Legislature intended to punish violations of RFSUA differently than violations of Section 30-16-33. *See State v. Rodriguez*, 2005-NMSC-019, ¶ 27, 138 N.M. 21, 116 P.3d 92 (holding that the crimes of general larceny and theft of a credit card were different crimes as they were located in two separate statutes and concluding that the Legislature intended to punish each crime independently from the other).

**{19}** Defendant contends that the Legislature may have overlooked RFSUA when it changed the penalty structure for property crimes in the penalty code in 2006. This argument is based on Defendant's belief that the statutes are in conflict and that they punish the same behavior. We have already concluded that Section 30-16-33 is not in conflict with RFSUA for purposes of punishing the unauthorized use of a debit card. Any potential conflict between RFSUA and Section 30-6-33 in the context of legislative confusion regarding multiple punishments for the use of a credit card must be addressed in the appropriate case actually involving the use of a credit card. *See State v. Ware*, 118 N.M. 703, 705, 884 P.2d 1182, 1184 (Ct. App. 1994) (stating that the Court will not address issues based upon a different factual analysis or other evidence not raised in the trial court below). Because the two statutes do not both produce criminal culpability when a debit card transaction is involved, the facts in this case do not necessitate further review of whether the Legislature overlooked one statute when it modified the other. Defendant has not demonstrated any reason or pointed us to any evidence that would make his contention plausible in a debit card transaction, and we find none. As we have previously stated, "[t]he Legislature is presumed to know existing statutory law and to take that law into consideration when enacting new law." *Gutierrez v. W. Las Vegas Sch. Dist.*, 2002-NMCA-068, ¶ 15, 132 N.M. 372, 48 P.3d 761.

**{20}** Alternatively, Defendant urges us to apply the rule of lenity to his case. "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994). Because we have concluded that the statutes do not conflict in this case and that their plain terms make clear that RFSUA applies to the use of a debit card, while Section 30-16-33 does not, there is no "insurmountable ambiguity" to which we would apply the rule of lenity. *See State v. Davis*, 2003-NMSC-022, ¶ 14, 134 N.M. 172, 74 P.3d 1064 ("[T]he rule of lenity does not apply since no doubts about construction and no insurmountable ambiguity exist[.]"); *State v. Clements*, 2009-NMCA-085, ¶ 13, 146 N.M. 745, 215 P.3d 54 (declining to extend lenity

to a statute that the court reasoned was sufficiently clear), *cert. denied*, 2009-NMCERT-007, 147 N.M. 362, 223 P.3d 359.

**Defendant's Due Process Rights Under the Constitutions of the United States and the State of New Mexico Have Not Been Violated**

**{21}** Defendant argues that his due process rights guaranteed by the Constitutions of the United States and the State of New Mexico have been violated because he was not given a fair and adequate warning about what conduct was prohibited or how he would be charged. U.S. Const. amend. XIV; N.M. Const. art. II, § 18. We view this argument as a void for vagueness argument. The State asserts that Defendant failed to preserve this argument. We consider Defendant's argument even if he failed to preserve it. *See Schneider Nat'l, Inc. v. State Taxation & Revenue Dep't*, 2006-NMCA-128, ¶ 11, 140 N.M. 561, 144 P.3d 120 (considering a void for vagueness argument without expressing "an opinion as to whether [it] was, or needed to be, preserved"); *see also State v. Laguna*, 1999-NMCA-152, ¶ 23, 128 N.M. 345, 992 P.2d 896 (reviewing a void for vagueness argument about a criminal statute despite a lack of preservation).

**{22}** A statute may be void for vagueness "if [its] meaning is so uncertain that the court is unable, by the application of known and accepted rules of construction, to determine what the [L]egislature intended with any reasonable degree of certainty." *Schneider Nat'l*, 2006-NMCA-128, ¶ 11 (internal quotation marks and citation omitted). Defendant contends that the prosecution had too much discretion in determining which statute to charge, and therefore, the statute is unconstitutionally vague. We have concluded above that the prosecution did not have discretion to prosecute Defendant under Section 30-16-33 because a debit card is not included in the statutory definition of "credit card" for purposes of that section. Because we were able to determine the legislative intent through established rules of statutory interpretation, the statute is not unconstitutionally vague. *See Schneider Nat'l*, 2006-NMCA-128, ¶ 11 (concluding that a statute was not void for vagueness where the court "discerned the legislative intent . . . by means of established rules of statutory construction").

**Defendant Failed To Preserve His Argument That His Prosecution and Convictions Under RFSUA Violate Equal Protection as Guaranteed by the Constitutions of the United States and the State of New Mexico**

**{23}** Defendant asserts that his convictions under RFSUA violate equal protection as guaranteed by both the Constitutions of the United States and the State of New Mexico. *See* U.S. Const. amend. XIV; N.M. Const. art II, § 18. However, we do not address this argument as he failed to preserve it for appellate review. *See State v. Wyman*, 2008-NMCA-113, ¶ 10, 144 N.M. 701, 191 P.3d 559, *cert. quashed*, 2009-NMCERT-012, 147 N.M. 601, 227 P.3d 91.

**There Is Sufficient Evidence to Support the Jury's Finding That Defendant "Used" the Debit Card at Walgreens**

**{24}** Defendant asserts that there was insufficient evidence presented at trial to sustain his conviction for the "use" of Sando's debit card at Walgreens. "When evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction." *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). We measure the sufficiency of the evidence against the jury instructions. *See State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). The jury instruction submitted at trial for the violation of RFSUA stated that

> the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant *used a card* belonging to Kathryn Sando at Walgreens;
> 2. [D]efendant used the card without Kathryn Sando's consent;
> 3. This happened in New Mexico on or about the 26th day of September, 2007.

(Emphasis added).

**{25}** The evidence introduced at trial was as follows. The State introduced two receipts showing attempted purchases with Sando's debit card at Walgreens. The State also presented evidence that Defendant entered a pin number combination three times at the register at Walgreens to try to make a purchase. In addition, the State played a surveillance camera recording showing the attempted debit card transactions at Walgreens to the jury. Finally, Defendant told police that he used a card at Walgreens, that he entered a PIN number three times, and that the card was not accepted.

**{26}** In this case, considering the evidence "in the light most favorable to the . . . prevailing party, indulging all reasonable inferences in support of the trial court's ruling, and disregarding all evidence and inferences to the contrary," we conclude that there was sufficient evidence presented that Defendant "used" Sando's card at Walgreens. *See State v. Verdugo*, 2007-NMCA-095, ¶ 12, 142 N.M. 267, 164 P.3d 966.

**{27}** Defendant further relies on *Verdugo* to assert that there was insufficient evidence that he "used" Sando's debit card at Walgreens. We are not persuaded. The question in *Verdugo* was whether there had been sufficient evidence presented to sustain a conviction for attempted violation of making an "unauthorized withdrawal from the account of another person" under RFSUA. Section 58-16-16(B); *Verdugo*, 2007-NMCA-095, ¶¶ 28, 29. At the outset, we note that the defendant in *Verdugo* was prosecuted on a different theory than that pursued in this case. In *Verdugo*, the defendant was prosecuted for robbery and attempt to commit unauthorized use of an ATM card of another. *Id.* ¶ 1. In that case, we did not decide whether the evidence would have been sufficient to sustain a conviction for a completed

8

violation of RFSUA. We only held that based on the evidence presented—that an ATM machine ate a debit card that the defendant tried to use—there was sufficient evidence for an "attempt" to make a withdrawal with a ATM card. *Id.* ¶ 29. *Verdugo* does not support Defendant's argument. As we have explained, the evidence here showed that Defendant used Sando's debit card at Walgreens with the purpose of purchasing goods and debiting Sando's checking account. Defendant admitted that he thought he used a debit card, that he entered a PIN, that he gave the card to the Walgreens' clerk who tried to run it through several times, and a video showing the transactions was admitted into evidence. The statutory language in RFSUA does not require that Defendant's use of the debit card actually effectuate a successful transaction. "We do not add an element unintended by the Legislature or the Supreme Court." *State v. Anderson*, 2001-NMCA-027, ¶ 34, 130 N.M. 295, 24 P.3d 327; *see also State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988) ("Although we cannot add a requirement that is not provided for in the statute and cannot read into it language that is not there, we do read the act in its entirety and construe each part . . . to produce a harmonious whole." (citation omitted)). Adding the additional requirement of "successfulness" to the use of debit card under RFSUA would be an inappropriate narrowing of the broad legislative language used to punish this wrongful conduct. Substantial evidence supports Defendant's conviction for "mak[ing] an unauthorized use" of the debit card of another at Walgreens. *See* § 58-16-16; *Verdugo*, 2007-NMCA-095, ¶ 28.

**Defendant's Sentence Does Not Constitute Cruel and Unusual Punishment**

{28}    Defendant argues that his seven-and-one-half-year sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article II, Section 13 of the New Mexico Constitution. Defendant concedes that he failed to preserve this argument, and we therefore only review this claim for fundamental error. *See* Rule 12-216(B)(2) NMRA (stating that an appellate court may consider jurisdictional questions and questions involving fundamental error even where the party failed to preserve those issues); *State v. Trujillo*, 2002-NMSC-005, ¶ 64, 131 N.M. 709, 42 P.3d 814 (stating that a constitutional claim of cruel and unusual punishment is a non-jurisdictional claim that must be preserved for appeal).

{29}    "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. The error must "shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

{30}    Defendant was convicted of violating RFSUA on four counts, along with a fifth count for identity theft and, therefore, he accumulated five fourth-degree felonies for his conduct on September 26, 2007. He was sentenced to eighteen months for each felony conviction for a total of seven-and-one-half years. The district court reduced Defendant's sentence to

two years of incarceration. Although Defendant is a habitual offender, the State did not request, and the district court did not impose, an increased sentence based on this status.

**{31}** Defendant argues that his sentence is cruel and unusual because it is longer than the sentence for Section 30-16-33, for fraudulent use of a credit card for less than $250 and because it is longer than the sentence he would have received had he stolen $83 in cash instead of using Sando's debit card. When the length of a sentence is disproportionate to the crime that is charged, it may constitute cruel and unusual punishment. *See State v. Escamilla,* 107 N.M. 510, 513, 760 P.2d 1276, 1279 (1988) ("[T]he length of sentence is purely a matter of legislative prerogative, unless the statutory sentence is disproportionate to the offense involved."). However, in almost all cases "a statutorily lawful sentence does not constitute cruel and unusual punishment." *State v. Burdex*, 100 N.M. 197, 202, 668 P.2d 313, 318 (Ct. App. 1983). This is because "[i]t is the Legislature's province to set penalties for crimes and only in exceptional circumstances will the court invade this province." *State v. Rueda*, 1999-NMCA-033, ¶ 16, 126 N.M. 738, 975 P.2d 351.

**{32}** Defendant argues that his sentence is disproportionate to the sentence he would have received had he only been charged under the fraudulent use of a credit card statute. However, as we have discussed above, the Legislature has distinguished the conduct of unauthorized use of a debit card from the unauthorized use of a credit card, such that it is not the same conduct, and violations of each statute receive different punishments. In addition, a finite amount of cash is easily distinguishable from a debit card where Defendant can potentially access the entire balance in a person's checking account. The potential for taking larger amounts of money from an individual's bank account would support a broader legislative prerogative in setting a more severe penalty. Finally, Defendant's sentence is not disproportional to the crimes of using Sando's debit card four times, and the sentence is within the statutory parameters provided for by the Legislature for violation of RFSUA. His sentence did not invite fundamental error.

**{33}** As a practical matter, all but two years of Defendant's sentence was suspended. Assuming Defendant had been charged with a petty misdemeanor, he could have been sentenced up to six months for each offense. As we have noted, he was sentenced to eighteen months on the fourth degree felony conviction for identity theft, and he did not appeal that conviction. The combination of his sentence for the identity theft conviction coupled with four petty misdemeanor offenses of six months would have totaled in excess of two years and resulted in a sentence that could have exceeded the incarceration time Defendant actually received in this case.

**{34}** On appeal, Defendant contends that the New Mexico Constitution affords him greater protections from cruel and unusual punishment than the United States Constitution. In order to preserve such a claim, Defendant would have needed to "assert at trial that the state constitution should be interpreted more broadly and provide reasons for the requested departure." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 11, 130 N.M. 386, 25 P.3d 225. Because he did not do so and because he does not argue on appeal how the New Mexico

10

Constitution is different from the United States Constitution, we will not consider his argument.

**The Amended Judgment and Sentence Must Be Further Amended**

**{35}** Defendant argues, and the State concedes, that the Amended Judgment and Sentence (J & S), filed on May 20, 2009, contains two errors. First, Count 5 must be changed from fraudulent use of a credit card without consent of cardholder ($300 or less) to show conviction under Section 58-16-16 for violation of the RFSUA. Second, the amended J & S shows that Defendant was convicted pursuant to a guilty plea when, in fact, he was convicted after a jury trial. The State has indicated that it will file an amended J & S. To the extent that it has not yet done so, we remand with instructions that an amended judgment and sentence be entered consistent with our decision herein.

**CONCLUSION**

**{36}** For the foregoing reasons, we affirm the district court. We further remand for the entry of an amended judgment and sentence.

**{37}** **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Castillo_, Docket No. 29,641**

| AE | APPEAL AND ERROR |
| --- | --- |
| AE-PA | Preservation of Issues for Appeal |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| CT | CONSTITUTIONAL LAW |
| CT-CU | Cruel and Unusual |
| CT-DP | Due Process |
| CT-EP | Equal Protection |
| CT-NM | New Mexico Constitution, General |
| CT-VO | Vague or Overbroad |

**CL**  **CRIMINAL LAW**
CL-FR  Fraud

**CA**  **CRIMINAL PROCEDURE**
CA-SE  Substantial or Sufficient Evidence

**ST**  **STATUTES**
ST-RC  Rules of Construction