This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38412**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JASON LEE COMITZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Jason Comitz appeals the district court's amended judgment and sentence on multiple convictions after the New Mexico Supreme Court in *State v. Comitz*, 2019-NMSC-011, 443 P.3d 1130, reversed several of his convictions. Defendant's resentencing reduced his prison sentence from life plus fifteen years to thirty-four and one-half years. In this appeal, Defendant contends the district court, in fashioning his amended sentence, deprived him of due process by acting vindictively and relying on acquitted conduct or abused its discretion. We affirm.

## BACKGROUND

**{2}** Several days before the incident giving rise to the charges in this case, Defendant went to the home of his friend Paul Randy Rael (Randy) to collect a drug debt of $30. *Id.* ¶ 2. During a fight that ensued between Randy's stepson Manuel Ramirez (Manuel) and Defendant, Defendant was punched multiple times and pushed to the ground. *Id.* Several days later, Defendant and two companions, all armed with handguns, returned to the Rael home. *Id.* ¶ 3. Randy, Manuel, Randy's wife, Randy's son, Paul Rael Junior (Paul), and Randy's ten-year-old granddaughter were there. *Id.* Randy's wife and granddaughter remained inside, while Randy, Manuel, and Paul went out to the porch. *Id.* ¶¶ 4-5. Meanwhile, Defendant and his companions were on the sidewalk. *Id.* ¶ 5. Eventually, Defendant and his companions began shooting at Randy, Manuel, and Paul. *Id.* ¶ 6. Randy died from a gunshot wound to his neck; Paul was shot in the head and survived; and Manuel was shot in the leg and survived. *Id.* ¶ 8. Randy's wife and granddaughter were not physically injured. *Id.*

**{3}** Defendant was charged with numerous offenses, *id.* ¶ 9, and a jury convicted him of first-degree felony murder and second-degree murder of Randy, four counts of aggravated battery of Paul and Manuel, two counts of aggravated assault of Paul and Manuel, multiple conspiracy counts, child abuse, and shooting at a dwelling. *Id.* ¶ 10. The district court judge, who presided over the jury trial, sentenced Defendant to the basic sentence for each offense, including life imprisonment for first-degree felony murder, NMSA 1978, § 30-2-1(A)(2) (1994), with firearm enhancements where applicable. *See* NMSA 1978, § 31-18-14 (2009) (basic sentences for capital felonies); NMSA 1978, § 31-18-15 (2007, amended 2019) (basic sentences for noncapital felonies); NMSA 1978, § 31-18-16 (1993, amended 2020) (firearm enhancement). The district court ran the sentences for the aggravated assault convictions concurrently with the sentences on the remaining convictions. Otherwise, in all relevant respects, the remaining sentences ran consecutively for an aggregate sentence of life plus fifteen years.

**{4}** Defendant appealed his convictions to the New Mexico Supreme Court. *See Comitz*, 2019-NMSC-011, ¶ 11. The Court concluded that the State failed to prove the predicate felony of shooting at a dwelling for Defendant's first-degree felony murder conviction. *Id.* ¶ 23. The Court explained that shooting at a dwelling requires a showing "that the target of the defendant['s] gunfire was the dwelling . . . itself." *Id.* ¶ 19. In this case, the Court concluded that "the only reasonable inference from the evidence" was that "Defendant and his companions specifically and primarily targeted the Raels themselves in the course of a gunfight that took place in front of the dwelling." *Id.* ¶ 18.

**{5}** Because the State failed to prove the predicate felony, the Court vacated Defendant's convictions for first-degree felony murder and shooting at a dwelling; and for similar reasons, the Court vacated his conviction for conspiracy to commit shooting at a dwelling. *Id.* ¶¶ 23-24. The Court also vacated, on double jeopardy grounds, two of Defendant's convictions for aggravated battery and two of his convictions for conspiracy. *Id.* ¶¶ 31, 36. The Court remanded the case to the district court for

resentencing on the remaining convictions: second-degree murder of Randy, two counts of aggravated battery of Paul and Manuel, conspiracy to commit aggravated battery, two counts of aggravated assault of Paul and Manuel, and child abuse. *See id.* ¶¶ 9, 53.

{6}     The same judge who presided over the jury trial and Defendant's original sentencing presided over Defendant's resentencing. At the resentencing hearing, the district court and the parties agreed that the maximum sentence allowed on the remaining charges, including with applicable firearm enhancements, was thirty-four and one-half years. The following exchange ensued:

| | |
|---|---|
| Judge: | I've already heard all the arguments, right? |
| Defense counsel: | Your, honor, the defense does have some arguments now that this case has been remanded on the second-degree murder as opposed to a first . . . .[1] |
| Judge: | What could be different? |
| Defense counsel: | And the fact that so many convictions were actually vacated. Well, your honor, at this time… |
| Judge: | Well, I don't agree. Let me just tell you from the start, when you shoot in the direction of a house, that's shooting at a dwelling. I don't agree with the Supreme Court and how they did that, and that's fine; I'm coming back on it, but, go ahead. |

At that point, the district court permitted extensive argument from defense counsel. Defense counsel requested that the district court run the remaining counts as it did in the original sentencing—that is, run the aggravated assault convictions concurrently with the other offenses and run all other offenses consecutively—for an aggregate sentence of twenty-nine and one-half years. Defense counsel further requested that the district court suspend thirteen and one-half years, for an effective term of sixteen years' incarceration. Counsel argued the sentence would be comparable to the codefendants' sentences and contended it was justified given Defendant's relative culpability, shown in part by the fact that the bullet that killed Randy was not from Defendant's gun.[2]

{7}     Randy's wife spoke next, followed by counsel for the State. The State contended that the incident would not have happened had Defendant not instigated it, and the State requested that all counts be run consecutively so Defendant would be sentenced to the full thirty-four and one-half years. Defendant then addressed the court. Though he

---

[1]Because these statements by defense counsel are difficult to discern from the audio recording, this transcription only approximates them.

[2]Subsequent to Defendant's original appeal, his codefendants pled guilty to lesser charges. One codefendant received a sentence of thirty-four years with nineteen years suspended, while the other received a sentence of twenty-eight and one-half years with sixteen years suspended.

apologized for "what ha[d] happened," he did not appear to accept responsibility for his actions, stating, "There's no way I would have [done] anything to hurt Randy." In announcing her sentencing decision, the district court judge stated:

> I remember this trial and I remember the testimony of the witnesses and the evidence that was presented, and [Defendant] was the start of all of this over $30. And the life of an individual was worth $30. And the fact that you had gotten upset about the son pushing you down on the ground when you came to collect your $30. You then, with friends, with drugs and alcohol, fueled your anger at being disrespected, being pushed down; you and your friends decided to go show them who was boss. And all three of you were armed. And you don't go to a place unless you mean business—if you carry a gun with you, you mean business. Mr. Comitz, had you not decided to try to confront them with your friends, none of this would have happened. This was all your decision making. And maybe it helps you to sleep at night knowing that your bullet wasn't the one that killed your friend. But that bullet wouldn't have been there had it not been [for] you. So ultimately, you hold most of the responsibility for all of this, compared to the codefendants in this case, who didn't know Randy, who didn't know the family, who had no dog in that fight. This was all your fight, not theirs. I'm going to run everything consecutive to each other, for a total of thirty-four and a half years.

**{8}** Defendant now appeals his amended sentence.

## PRESERVATION AND STANDARD OF REVIEW

**{9}** We generally review a trial court's sentencing decision for an abuse of discretion. *See State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491. However, Defendant's due process challenges, if preserved, are generally subject to de novo review. *See State v. Dyke*, 2020-NMCA-013, ¶ 24, 456 P.3d 1125 (reviewing de novo the question of "whether a harsher sentence represents a due process violation"). *But see State v. Gardner*, 2003-NMCA-107, ¶ 39, 134 N.M. 294, 76 P.3d 47 (applying the abuse of discretion standard to decide whether the court's consideration of uncharged conduct at sentencing violated due process).

**{10}** While Defendant contends he "preserved arguments related to the general propriety of [his] sentence," he acknowledges that he did not object on the due process grounds he now raises on appeal. In light of this, we conclude that Defendant's due process arguments were not preserved. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *see also State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 ("In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted)).

**{11}** Nonetheless, we exercise our discretion to review Defendant's unpreserved, constitutional claims for fundamental error. *See State v. Jensen*, 1998-NMCA-034, ¶ 16, 124 N.M. 726, 955 P.2d 195 (reviewing an unpreserved claim pertaining to the consideration of certain materials at resentencing for fundamental error); *see also State v. Castillo*, 2011-NMCA-046, ¶ 28, 149 N.M. 536, 252 P.3d 760 (reviewing an unpreserved, constitutional sentencing claim for fundamental error). We, however, apply the fundamental error exception sparingly. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice. The error must shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Castillo*, 2011-NMCA-046, ¶ 29 (internal quotation marks and citations omitted).

## DISCUSSION

**{12}** Defendant contends the district court, in fashioning his amended sentence: (1) deprived him of due process by acting vindictively; (2) deprived him of due process by relying on acquitted conduct; or (3) abused its discretion. We address each of Defendant's arguments in turn.

## I.    Judicial Vindictiveness

**{13}** We first take up Defendant's claim that his amended sentence is a product of judicial vindictiveness. "A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as . . . the right to appeal." *Dyke*, 2020-NMCA-013, ¶ 24. Defendant requests that we apply the presumption of vindictiveness, as a matter of federal due process, adopted by the United States Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). *Pearce*, as our Supreme Court has explained, sets out a prophylactic rule that "a presumption of vindictiveness arises when [a defendant's] second sentence is more severe than the first." *State v. Saavedra*, 1988-NMSC-100, ¶ 20, 108 N.M. 38, 766 P.2d 298.

**{14}** The *Pearce* presumption of vindictiveness, however, applies in limited circumstances. It does not apply where "there was no realistic possibility that the [judge] at the second trial would be motivated by vindictiveness." *Saavedra*, 1988-NMSC-100, ¶ 21. And, as relevant to this case, the presumption "arises [only] when the second sentence is *more severe* than the first." *Id.* ¶ 20 (emphasis added). In determining whether the second sentence is more severe in cases involving multiple convictions, such as this one, the question arises whether to look at the sentence for each count or the sentence as a whole. While the United States Supreme Court has not answered the question, New Mexico, nearly forty years ago, joined what appears to be a majority of federal and state courts in adopting an "aggregate package," or total term of imprisonment, approach.[3] *See State v. Lopez*, 1983-NMCA-045, ¶¶ 5-6, 99 N.M. 612,

---

3*See* 6 Wayne R. LaFave, *Criminal Procedure* § 26.8(a) (4th ed. 2021) ("Most courts look primarily to the total prison term . . . . Only the Second Circuit now follows the minority approach, comparing sentences for remaining counts, along with several state courts." (footnote omitted)).

661 P.2d 890. *Lopez* held that "*Pearce* . . . and the concept of 'judicial vindictiveness' are not applicable . . . where the *total* term of imprisonment subsequently ordered is less than the original which had been imposed."[4] *Lopez*, 1983-NMCA-045, ¶ 6 (emphasis added).

**{15}** Where the *Pearce* presumption of vindictiveness arises, the sentencing judge's reasons for imposing the more severe sentence "must affirmatively appear" in the record. *State v. Cordova*, 1983-NMCA-144, ¶ 25, 100 N.M. 643, 674 P.2d 533 (internal quotation marks and citation omitted). Where the presumption does not arise, relief is available only when the defendant establishes his sentence was influenced by actual vindictiveness. *See Saavedra*, 1988-NMSC-100, ¶ 21; *Dyke*, 2020-NMCA-013, ¶ 25.

**{16}** In this case, Defendant argues (A) a presumption of vindictiveness arose from his amended sentence; (B) regardless, he has shown the district court's actual vindictiveness to punish him for exercising his right to appeal; or (C) if current New Mexico precedent does not afford him relief, we should overrule *Lopez* or interpret the New Mexico Constitution to provide greater protection in this context. As we explain, we are not persuaded by Defendant's arguments.

## A. Presumptive Vindictiveness

**{17}** To support his claims of judicial vindictiveness, Defendant contends that his sentence was "increased" as a result of his aggravated assault sentences running consecutively to his remaining sentences, when they originally had been run concurrently. Defendant's argument is foreclosed by *Lopez*. As this Court explained, "[t]he trial court has the discretion to order that sentences for different offenses be served concurrently or consecutively," 1983-NMCA-045, ¶ 4, and "[t]he fact that concurrent sentences are changed to consecutive terms does not by itself indicate an actual increase in penalty." *Id.* ¶ 5. *Lopez* held that the presumption of vindictiveness does not arise "where the total term of imprisonment subsequently ordered is less than the original which had been imposed." *Id.* ¶ 6; *see also id.* ¶¶ 3, 5-6 (concluding no presumption of vindictiveness arose from an amended sentence when counts that previously ran concurrently were run consecutively and the total term of incarceration decreased from twenty-one years to nineteen years). For the same reasons, the presumption of judicial vindictiveness does not arise in this case—where, notwithstanding the fact that Defendant's sentence on some counts changed from

---

[4]*Lopez* has since been reaffirmed. *See State v. Case*, 1985-NMCA-027, ¶ 27, 103 N.M. 574, 711 P.2d 19 (concluding that the presumption of vindictiveness did not apply when the trial court originally sentenced the defendant to one year for each of ten instances of contempt, for a total of ten years, and on resentencing after appeal, resentenced the defendant to ten years for the one remaining count of contempt), *rev'd on other grounds*, 1985-NMSC-103, 103 N.M. 501, 709 P.2d 670; *State v. Duncan*, 1994-NMCA-030, ¶¶ 1, 4, 117 N.M. 407, 872 P.2d 380 (providing that "the presumption of vindictiveness does not apply" where the initial sentence exceeded forty years on fourteen counts, but on resentencing was reduced to thirty-four years on two counts), *abrogated on other grounds by State v. Brule*, 1999-NMSC-026, ¶¶ 3-6, 127 N.M. 368, 981 P.2d 782.

concurrent to consecutive, Defendant's total amended sentence of thirty-four and one-half years is less than his original sentence of life plus fifteen years. *See id.*

## B. Actual Vindictiveness

**{18}** Defendant alternatively argues that the record demonstrates actual vindictiveness. Defendant bears the burden to make this showing. *See Dyke*, 2020-NMCA-013, ¶ 25. As proof that the district court imposed a vindictive sentence to punish Defendant for exercising his right to appeal, he again points to the change in his aggravated assault sentences from concurrent to consecutive. Defendant also cites the omission by the judge of an explanation why she ran the counts consecutively, as well as her initial comments expressing her disagreement with the New Mexico Supreme Court's shooting-at-a-dwelling ruling and questioning whether anything had changed or additional argument was needed.

**{19}** From our review of the record, there is no indication that the district court fashioned Defendant's sentence because of any indignation over his exercise of his right to appeal. While Defendant would have us look at a couple of the judge's comments in isolation, we decline to do so. Instead, considering the hearing as a whole, we are not persuaded that Defendant's amended sentence was a product of actual vindictiveness. To begin, we disagree that the district court judge's taking exception to our Supreme Court's shooting-at-a-dwelling ruling exposes vindictiveness; in the end, she submitted to the Court's judgment. *See id.* ¶ 28 (declining to consider a comment by the resentencing judge in isolation, particularly given its susceptibility to an innocuous, alternative interpretation). Indeed, the district court fashioned an amended sentence reflecting only the convictions remaining after appeal. *See id.* ¶¶ 28-29 (finding no actual vindictiveness where no statement of the resentencing judge betrayed vindictiveness and where the sentence was foreseen as possible). Moreover, by all appearances, it was the State's, not the judge's, idea to run the aggravated assault sentences consecutively. Lastly, the district court gave a reasoned explanation for imposing the maximum available sentence, citing facts establishing Defendant's culpability, including in relation to his codefendants; the judge did not state or imply that Defendant's exercise of his right to appeal influenced her decision. *See id.* (undermining the defendant's allegation of vindictiveness by reference to the sentencing court's "reasoned explanation for the sentence").

**{20}** In sum, Defendant has failed to show that his amended sentence was based on a desire by the district court to punish him for exercising his constitutional right to appeal. *See id.* ¶ 29.

## C. Departure From Existing Law

**{21}** Defendant next contends that, if existing New Mexico law denies him relief, we should either overrule *Lopez* or interpret the New Mexico Constitution to provide greater protections in this context. In particular, Defendant requests that we adopt the minority approach for determining when the *Pearce* presumption of vindictiveness arises (i.e.,

comparing the original and amended sentences for each count), and abandon the "aggregate package" approach adopted in *Lopez*. We decline to do so.

**{22}** Defendant has not satisfied the high burden imposed by our courts for overturning precedent. "Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law." *Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 33, 125 N.M. 721, 965 P.2d 305. "It promotes very important principles in the maintenance of a sound judicial system: (1) stability of the law, (2) fairness in assuring that like cases are treated similarly, and (3) judicial economy." *Id.* (citations omitted). Thus, "any departure from precedent demands special justification" in view of the following factors:

> (1) whether the precedent is so unworkable as to be intolerable; (2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; (3) whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine; and (4) whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification.

*Id.* ¶ 34 (alteration, omission, internal quotation marks, and citation omitted).

**{23}** We understand Defendant's argument to hinge entirely on the first factor. Nonetheless, Defendant acknowledges that the "aggregate package" approach in *Lopez* "has not been proven unworkable as such," but contends "it has proven intolerably harsh." Setting aside the fact that "intolerable harshness" is not what we must be convinced of to overrule precedent, Defendant's explanation as to how *Lopez* has this effect is wanting. Initially, Defendant contends—based on the United States Supreme Court's progressive narrowing of the *Pearce* presumption's application and New Mexico's criminal sentencing scheme—that the *Pearce* presumption is "essentially unavailable" to defendants in New Mexico. As proof, Defendant points to the limited number of cases in New Mexico citing *Lopez*. Given the myriad reasons *Lopez* might not be cited more frequently, we find this argument unduly speculative, especially as a justification for overruling precedent. Next, Defendant contends it is easier for a defendant to sustain a claim of actual vindictiveness than to meet the requirements of presumptive vindictiveness and that his case proves this point. As we discussed, however, Defendant has not established actual vindictiveness, so the premise of this argument is lacking. What is more, given the particular circumstances of this case— where Defendant's statutorily authorized sentence represents a drastic decrease from his initial sentence, and where the district court stated a neutral reason for the amended sentence—we see "no realistic possibility" of vindictiveness, *Saavedra*, 1988-NMSC-100, ¶ 21, and no reasoned basis for departing from *Lopez* today.

**{24}** Suffice it to say that we decline Defendant's invitation to overrule *Lopez*. *See State v. Chavez*, 2021-NMSC-017, ¶¶ 53-54, 485 P.3d 1279 (declining to abandon precedent where the reasoning behind an "unworkable" claim was inadequate).

Furthermore, for the reasons discussed above, and because Defendant's state constitutional claim was neither preserved nor adequately developed on appeal, we decline to examine today whether the New Mexico Constitution provides greater protection in this area. *See Dyke*, 2020-NMCA-013, ¶ 23 (analyzing a presumptive vindictiveness claim under the federal constitution only, where the defendant "failed to preserve or adequately argue in the district court for protections under the New Mexico Constitution").

## II.     Acquitted Conduct

**{25}**     Based solely on the district court judge's expression of disagreement with our Supreme Court's shooting-at-a-dwelling ruling, Defendant contends that the court "considered him guilty of shooting at a dwelling . . . (and therefore felony murder and conspiracy) and intended to sentence him in accordance with that view." As proof of what Defendant regards as reliance by the district court on "acquitted conduct," Defendant again points to the fact that the district court ran his sentences for the aggravated assault convictions consecutively to his sentences for the remaining convictions, when they originally had been run concurrently.

**{26}**     Defendant argues at length about the impropriety of a sentencing court's reliance on acquitted conduct, a reliance he says violates due process. Yet he scarcely considers whether the district court in this case can be said to have relied on acquitted conduct, as that term is understood by the several authorities he cites.[5] We are not persuaded the district court engaged in such reliance, and therefore see no need to take up the particular question Defendant raises: whether, under the United States Constitution or the New Mexico Constitution, a court may take acquitted conduct into account at sentencing. We explain.

**{27}**     One authority Defendant cites, which is representative of the rest, *People v. Beck*, 939 N.W.2d 213 (Mich. 2019), illustrates what is meant by reliance on acquitted conduct in the sentencing context.[6] In *Beck*, the jury found the defendant guilty of being a felon in possession of a firearm and of carrying a firearm during the commission of a felony, but acquitted him of murder, among other offenses. *Id.* at 216. The Michigan sentencing guidelines range for the felon in possession conviction was 22 to 76 months,

---

5The term "acquitted conduct" is used in the several authorities cited by Defendant to refer at times to the counts or charges for which a defendant was acquitted, and at other times to the conduct *underlying* the acquitted counts or charges. *See, e.g.*, *People v. Black*, 33 A.D.3d 338, 341-42 (N.Y. App. Div. 2006) (referring to both the trial court's reliance on the charges for which the defendant was acquitted and the conduct underlying the acquitted charges). Unless otherwise specified, we use "acquitted conduct" to refer to both the acquitted charges and the conduct underlying such charges.

6None of the cases cited by Defendant involved the same scenario at issue here—in which a defendant's conviction was overturned by an appellate court and the defendant was then resentenced. They instead all involved the scenario where a defendant's innocence was determined by a jury and conduct or charges for which the jury acquitted the defendant was considered at original sentencing. Whether this is a distinction without a difference is, however, not something we grapple with today.

but the court imposed a sentence of 240 to 400 months for that offense. *Id.* The court justified the sentence as follows.

> [The jury] could not find, beyond a reasonable doubt, that the defendant committed the homicide. But the [c]ourt certainly finds that there is a preponderance of the evidence that he did. . . . [The defendant] was the person who perpetrated the killing. And I do find by a preponderance of the evidence that that has been shown. And I do consider that in going over the guidelines in this matter.

*Id.* at 217 (emphases omitted). Thus, the trial court explicitly countermanded the acquittal to find the defendant committed homicide, and it clearly relied on that finding to greatly lengthen his punishment for the lesser conviction. *Id.* In concluding this amounted to a federal due process violation, the Supreme Court of Michigan stated, "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." *Id.* at 225 (internal quotation marks and citation omitted). In *Beck*, and numerous other of the authorities cited by Defendant, the sentencing judge's reliance on acquitted conduct in fashioning the defendant's sentence was evident.[7]

**{28}**     This is in contrast to the circumstances here. In this case, the record does not reflect that the district court "relied on acquitted conduct" in resentencing Defendant, as he alleges. To begin, there plainly is no finding by the district court that Defendant "targeted the dwelling"—the conduct underlying the acquitted charge of shooting at a dwelling. *See Comitz*, 2019-NMSC-011, ¶ 19. Nor does the record reveal anything like the reliance on acquitted conduct observed in the cases Defendant cites. Instead, there is the district court judge's brief expression of disagreement with our Supreme Court's legal conclusion on what constitutes shooting at a dwelling, followed by her expression of willingness to accept it. This willingness is reflected in the sentence she imposed—i.e., a basic sentence for only those charges remaining on remand. Further, the judge

---

7*See, e.g.*, *State v. Paden-Battle*, 234 A.3d 332, 344-48 (N.J. Super Ct. App. Div. 2020) (requiring resentencing where the sentencing judge plainly relied on murder charges of which the defendant was acquitted to enhance the defendant's sentence), *aff'd sub nom. State v. Melvin*, 258 A.3d 1075 (N.J. 2021); *Black*, 33 A.D.3d at 342 (requiring resentencing where "the trial court freely admitted that it could not disregard [the] defendant's conduct underlying the murder" and other charges of which the defendant was acquitted in fashioning his sentence); *State v. Cote*, 530 A.2d 775, 783-85 (N.H. 1987) (concluding that the trial court's apparent reliance on the conduct underlying five charges of which the defendant was acquitted was an abuse of discretion); *State v. Marley*, 364 S.E.2d 133, 139 (N.C. 1988) (concluding that the trial court's increase in sentence, based on a judge-made finding that the killing was premeditated and deliberate when the defendant had been acquitted of first-degree murder, violated due process).
In the federal precedent cited by Defendant, the reliance on acquitted conduct as a basis for enhancing a defendant's sentencing is equally evident; this reliance, however, was held to be permissible. *See, e.g.*, *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam) (holding—where the district court found, notwithstanding the jury's verdict to the contrary, that the defendant used a firearm and used that finding to increase the guidelines range sentence—that "a jury's verdict of acquittal does not prevent the sentencing court from considering *conduct underlying the acquitted charge*, so long as that conduct has been proved by a preponderance of the evidence" (emphasis added)).

clearly articulated her reasons for selecting the maximum sentence on the remaining charges—i.e., Defendant's culpability, especially in relation to his codefendants.

**{29}** In short, the district court judge gave no indication that she was imposing Defendant's sentence in reliance on acquitted conduct. *See Gardner*, 2003-NMCA-107, ¶¶ 42-43 (concluding no due process violation occurred at sentencing where the information that formed the basis of the defendant's challenge on appeal was not plainly relied on by the sentencing judge); *see also State v. Aker*, 2005-NMCA-063, ¶¶ 21-22, 137 N.M. 561, 113 P.3d 384 (same); *cf. State v. Wilson*, 1982-NMCA-019, ¶¶ 20-25, 97 N.M. 534, 641 P.2d 1081 (finding no due process violation where the resentencing court imposed a statutorily authorized sentence, notwithstanding that the court characterized the conduct underlying the conviction as constituting an offense different from the convicted offense, given that the court otherwise articulated reasons for the sentence). We find the various authorities cited by Defendant inapposite; and we further conclude no reliance on acquitted conduct, or any possible corresponding due process violation, occurred at resentencing.

### III.  Abuse of Discretion

**{30}** In asserting that the district court abused its discretion in resentencing him, Defendant merely rehashes the arguments he made in support of his due process claims. We have thoroughly considered these arguments and conclude, for the reasons already stated, that the district court did not abuse its discretion in resentencing Defendant. *See Gardner*, 2003-NMCA-107, ¶ 43 ("We cannot find an abuse of discretion in the imposition of a basic sentence that was grounded in the evidence."); *Lopez*, 1983-NMCA-045, ¶ 4 ("The trial court has the discretion to order that sentences for different offenses be served concurrently or consecutively.").

### CONCLUSION

**{31}** For the foregoing reasons, Defendant has not demonstrated that his resentencing was the result of error, fundamental or otherwise, or amounted to an abuse of discretion. We affirm.

**{32}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**