Certiorari Denied, October 18, 2011, No. 33,227

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-115

Filing Date: August 23, 2011

Docket No. 30,070

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

GARRELL RAY TSOSIE,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Thomas J. Hynes, District Judge

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant Garrell Tsosie appeals the district court's order for conditional discharge and supervised probation following his plea to one count of battery upon a health care worker, contrary to NMSA 1978, Section 30-3-9.2(E) (2006). The State alleged that Tsosie struck Alan Albo, an employee of the Four Winds Recovery Center, Inc. in Farmington, New Mexico (Four Winds). Tsosie filed a motion to dismiss, arguing that the charges lacked a

1

legally sufficient basis because Albo was not a health care worker employed at a health facility as contemplated by Section 30-3-9.2(A)(1) and (2). The district court denied Tsosie's motion, concluding that the Four Winds Protective Care Unit (the PCU) constitutes a health facility and that Albo was both employed there and engaged in the performance of the duties of a health care worker at the time of the alleged battery. Tsosie subsequently entered a conditional guilty plea and reserved the right to appeal the district court's denial of his motion to dismiss.

**{2}** Tsosie raises three issues on appeal: (1) whether the New Mexico Detoxification Reform Act (the DRA), NMSA 1978, §§ 43-2-1.1 to -23 (1949, as amended through 2005), precludes the State from prosecuting Tsosie for battery upon a health care worker; (2) whether Albo met the definition of a health care worker employed by a health facility as contemplated by Section 30-3-9.2(A)(1) and (2), thereby precluding prosecution under Section 30-3-9.2(E); and (3) whether Section 30-3-9.2(A) and (E) are unconstitutionally vague and overbroad. We hold that (1) the DRA does not preclude prosecution of Tsosie for battery upon a health care worker; (2) Albo was a health care worker employed by a health facility at the time of the alleged battery; and (3) Section 30-3-9.2(A) and (E) are not unconstitutionally vague or overbroad. As a result, we affirm the district court's denial of Tsosie's motion to dismiss.

**FACTUAL AND PROCEDURAL HISTORY**

**{3}** On August 3, 2009, law enforcement officers brought Tsosie to the PCU for the purposes of protective custody and detoxification, pursuant to Section 43-2-8(A)(7) of the DRA. Section 43-2-8(A)(7) provides that an intoxicated person may be committed to a treatment facility for protective custody if there is probable cause to believe that the person being committed is incapacitated by alcohol or drugs.

**{4}** When Tsosie arrived at the PCU, Albo was on duty and checked his vital signs and admitted him to the PCU. Approximately ten minutes later, Albo served Tsosie a cup of soup instead of the tray of food that earlier arrivals had received since the meal count had already been completed for the evening. Tsosie became upset and began to throw other clients' trays on the ground. When Albo attempted to restrain him, Tsosie grabbed Albo's neck and injured him. Albo then punched Tsosie in the face. Tsosie had not yet received a formal assessment at the time of the incident because he was still intoxicated, and formal assessments do not occur until clients have been at the PCU for twenty-four hours and are no longer under the influence of alcohol or drugs.

**{5}** Tsosie moved to dismiss the charge of battery upon a health care worker on the grounds that (1) the DRA does not allow prosecution for batteries committed while a person was under the influence of alcohol; (2) Albo was not a health care worker at a health facility as defined by Section 30-3-9.2(A)(1) and (2); and (3) Section 30-3-9.2(A) and (E) are unconstitutionally vague and overbroad. Tsosie contended that dismissal was appropriate because the undisputed facts did not provide a legally sufficient basis for the charges. The

2

State filed a response to all three contentions raised in Tsosie's motion to dismiss.

**{6}** At the hearing on the motion to dismiss, the district court clarified that it was deciding as a matter of law whether Albo was a health care worker employed by a health facility based upon the undisputed facts regarding the facility and the nature of Albo's employment. Accordingly, this question of law was appropriate for disposition in a motion to dismiss. *See State v. Johnson*, 2009-NMSC-049, ¶ 4, 147 N.M. 177, 218 P.3d 863 (concluding that where the facts were undisputed, it was appropriate for the district court to determine as a matter of law whether security guards were "school employees" as envisioned in a statute prohibiting battery upon school personnel upon a motion to dismiss).

**{7}** The record reflects that the following undisputed facts were heard by the district court at the hearing on the motion to dismiss. Four Winds is licensed by the New Mexico Department of Health and Safety (the Department) as an adult residential care facility, and the PCU does not hold a separate license. The PCU is one of several buildings at Four Winds, which also includes an administrative building, a treatment facility, and a long-term treatment facility. The PCU is under the same management as the rest of Four Winds, and the PCU does not receive any separate funding.

**{8}** When clients arrive at Four Winds, they are initially admitted to the PCU if they are intoxicated or test positive for any drug at the time of their arrival. Clients are not permitted to leave the PCU for at least twenty-four hours and usually remain in protective custody for seventy-two hours. At that point, they may choose to remain at the PCU for up to twelve days before they are either released or moved to another Four Winds facility for further treatment.

**{9}** Employees such as Albo are given the title of Counselor Aides. When clients arrive at the PCU, Counselor Aides check clients' vital signs, perform various laboratory testing, question clients regarding their medical history, dispense meals, and provide care for clients. After clients are admitted to the PCU, Counselor Aides continue checking the clients' vital signs approximately every two hours, including temperature, respiration, blood pressure, and heart rate. Counselor Aides also monitor the blood sugar of clients with diabetes. As soon as PCU clients are sober enough to interact with the staff, they also begin receiving substance abuse treatment. Treatment may include talking to clients about their drinking behavior and its consequences, prescribing and dispensing medication, and completing behavioral therapy. After clients have been at the PCU for twenty-four hours, formal assessments are completed, and treatment plans are developed. If clients wish to be referred to long-term treatment, then additional assessments must be completed.

**{10}** Counselor Aides receive special training and become certified medical technicians. They are trained to take vital signs and identify issues associated with detoxification, and they are also instructed regarding the past medical history of specific clients. Counselor Aides are required to have current CPR and first aid certification. Although Albo testified that he had not yet received his certification as a medical technician at the time of the alleged

3

incident, he had prior medical experience, was trained in how to use the equipment, and had also completed his training with Four Winds. Once certified, Counselor Aides at the PCU are permitted to dispense prescription medication. One trained nurse on staff also serves the Four Winds facility, including the PCU. Finally, Four Winds employs a physician who is on call twenty-four hours per day and visits the facility weekly.

{11}    The district court denied Tsosie's motion to dismiss, concluding that Four Winds was a health facility as defined by Section 30-3-9.2(A)(1), that Albo was employed at Four Winds, and that Albo was engaged in the performance of the duties of a health care worker at the time of the alleged battery. Tsosie subsequently entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to dismiss. We must now review the district court's denial of Tsosie's motion to dismiss.

**DISCUSSION**

**The DRA Does Not Preclude Prosecution of Tsosie for Battery Upon a Health Care Worker**

{12}    Tsosie argues that because he was in protective custody due to intoxication at the time of the incident, the DRA precludes his prosecution for battery upon a health care worker. Specifically, he contends that because the DRA is more specific than the battery upon a health care worker statute, the DRA controls. Tsosie reasons that the broader criminal statute prohibiting battery upon a health care worker cannot impinge upon the specific protections the DRA affords to intoxicated persons and that the criminal statute must yield to the DRA in order to achieve a harmonious interpretation.

{13}    The issue of whether the DRA precludes prosecution of intoxicated persons such as Tsosie for battery upon a health care worker is a question of statutory interpretation, which this Court reviews de novo. *See State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. "Our ultimate goal in statutory construction is to ascertain and give effect to the intent of the Legislature." *Id.* (internal quotation marks and citation omitted). We determine legislative intent by "first look[ing] at the words chosen by the Legislature and the plain meaning of those words." *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579. "[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939 (internal quotation marks and citation omitted). Furthermore, where multiple statutes are applicable, we attempt to read them in harmony with each other. *State v. Trujillo*, 2009-NMSC-012, ¶ 22, 146 N.M. 14, 206 P.3d 125. If two statutes cannot be harmonized, then the more specific statute controls. *State v. Cleve*, 1999-NMSC-017, ¶ 17, 127 N.M. 240, 980 P.2d 23.

{14}    Battery upon a health care worker is defined as "the unlawful, intentional touching[,] or application of force to the person of a health care worker who is in the lawful discharge of the health care worker's duties, when done in a rude, insolent[,] or angry manner."

Section 30-3-9.2(E). Battery upon a health care worker is punishable as a fourth degree felony. *Id.* The statutory language contained in the DRA must also be considered. In pertinent part, the DRA states:

> It is the policy of this state that intoxicated and incapacitated persons may not be subjected to criminal prosecution, but rather should be afforded protection. It is further the policy of this state that alcohol-impaired persons and drug-impaired persons should be afforded treatment in order that they may lead normal lives as productive members of society.

Section 43-2-3.

**{15}** In *State v. Correa*, 2009-NMSC-051, ¶ 6, 147 N.M. 291, 222 P.3d 1, our Supreme Court addressed a similar issue regarding whether the DRA precludes prosecution for disorderly conduct. *Correa* held that the DRA does not prohibit criminal prosecution for disorderly conduct merely because the accused party was intoxicated, as long as the statutory elements of the charge are satisfied. *Id.* ¶ 1. *Correa* reasoned that the Legislature's intent in adopting Section 43-2-3 was to address substance abuse issues, rather than "to make a radical change in existing criminal law." *Correa*, 2009-NMSC-051, ¶ 15. *Correa* rejected an expansive interpretation of Section 43-2-3 under which "an accused would not be criminally liable for murder, burglary, assault, or battery if he was intoxicated when he committed the offense." *Correa*, 2009-NMSC-051, ¶ 16. In doing so, *Correa* reasoned that the Legislature did not intend for "voluntary intoxication [to] provide wholesale immunity to the accused, or preclude the State from pursuing criminal sanctions." *Id.* Instead, *Correa* determined that "[w]hile intoxication itself is not criminal, any criminal offenses committed while an accused is intoxicated are still punishable under the Criminal Code." *Id.* ¶ 19. Finally, *Correa* concluded the DRA did not conflict with the Criminal Code. *Id.*

**{16}** Relying on *Correa*, we conclude that the DRA does not preclude Tsosie's prosecution for battery upon a health care worker under Section 30-3-9.2. Our Court's reasoning that "*any criminal offenses* committed while an accused is intoxicated are still punishable under the Criminal Code" encompasses the criminal offense of battery upon a health care worker. *Correa*, 2009-NMSC-051, ¶ 19 (emphasis added). Furthermore, the Court specifically indicated that the Legislature did not intend for the DRA to eliminate criminal liability for "murder, burglary, assault, or *battery*" merely because an accused was intoxicated when he committed the offense. *Id.* ¶ 16 (emphasis added). Here, Tsosie was not prosecuted for intoxication itself, but rather for a battery allegedly committed while he was intoxicated.

**{17}** Tsosie has not distinguished his case from *Correa* in any meaningful way. Instead, he argues that we should interpret the criminal statute regarding battery upon a health care worker as more broad than the DRA, and thus treat the DRA as an exception which prohibits prosecution in this case. However, this principle is not applicable if the DRA does not conflict with the battery on a health care worker statute. *See id.* ¶ 19; *see also Cleve*, 1999-

5

NMSC-017, ¶ 17 (reasoning that the more specific of two statutes controls only if the statutes cannot be harmonized). Consistent with *Correa*, Tsosie is not being criminally prosecuted for intoxication contrary to the DRA, but only for a criminal offense committed while he was intoxicated. *See* 2009-NMSC-051, ¶ 19. Accordingly, we hold that the DRA does not preclude the State from prosecuting Tsosie for battery upon a health care worker merely because he was in protective custody due to his intoxication at the time of the offense. Although the DRA does not preclude prosecution, the State was still required to carry the burden of proving all of the statutory elements of battery upon a health care worker. *See id.*

**Albo Met the Definition of a Health Care Worker Under Section 30-3-9.2**

{18} Next, we address the issue regarding whether Albo was a health care worker pursuant to Section 30-3-9.2(E). *See Johnson*, 2009-NMSC-049, ¶ 9 (concluding that "[t]he issue of whether security guards are 'school employees' as defined in the battery upon school personnel statute is a purely legal question"). Because this issue presents a matter of statutory interpretation, our review is de novo. *State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489.

{19} As previously discussed, we first seek to give effect to the language of a statute as written. *State v. Padilla*, 2008-NMSC-006, ¶ 7, 143 N.M. 310, 176 P.3d 299. "[W]here a statute specifically defines a term, we interpret the statute according to those definitions because those definitions reflect legislative intent." *State v. Smith*, 2009-NMCA-028, ¶ 13, 145 N.M. 757, 204 P.3d 1267, *cert. quashed*, 2009-NMCERT-012, 147 N.M. 601, 227 P.3d 91. "When a term is not defined in a statute, we must construe it, giving those words their ordinary meaning absent clear and express legislative intention to the contrary." *Johnson*, 2009-NMSC-049, ¶ 10 (internal quotation marks and citation omitted). Where "language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity[,] or contradiction," we construe a statute "according to its obvious spirit or reason." *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064.

{20} As previously noted, battery upon a health care worker is defined as "the unlawful, intentional touching[,] or application of force to the person of a health care worker who is in the lawful discharge of the health care worker's duties, when done in a rude, insolent[,] or angry manner." Section 30-3-9.2(E). As defined in the statute, a "health care worker" is "an employee of a health facility or a licensed emergency medical technician[.]" Section 30-3-9.2(A)(2). Additionally, Section 30-3-9.2(A)(1) defines a "health facility" as follows:

> a public or private hospital, outpatient facility, diagnostic and treatment center, rehabilitation center[,] or infirmary. 'Health facility' also includes those facilities that, by federal regulation, must be licensed by the state to obtain or maintain full or partial, permanent or temporary federal funding, but 'health facility' does not include a skilled nursing facility, a nursing facility[,] or other long-term residential care facility[.]

6

**{21}** Two categories of persons are considered health care workers under Section 30-3-9.2(A)(2): employees of a health facility or licensed emergency medical technicians. The district court determined that Albo was a health care worker because he was an employee of a health facility. The parties agree that Albo was an employee of Four Winds at the time of the alleged incident. However, they disagree as to whether Four Winds, and specifically the PCU therein, constitutes a health facility as envisioned by Section 30-3-9.2(A)(1). Therefore, in order to determine whether Albo was a health care worker as contemplated by Section 30-3-9.2(A)(2), we must determine whether the Four Winds PCU meets the definition of a health facility under Section 30-3-9.2(A)(1).

**{22}** The district court concluded that the Four Winds PCU constitutes a health facility because it met the definition of a "diagnostic and treatment center" under Section 30-3-9.2(A). Although Section 30-3-9.2 provides a definition for "health facility" and "health care worker," "diagnostic and treatment center" is not defined by Section 30-3-9.2 or by the general definitions applicable in the Criminal Code. *See* NMSA 1978, § 30-1-12 (1963) (providing general definitions applicable in the Criminal Code). Furthermore, Section 30-3-9.2 does not indicate that the Legislature intended for a meaning other than the ordinary meaning of "diagnostic and treatment center" to apply under the Criminal Code. Therefore, we examine the ordinary meaning of "diagnostic and treatment center." *See Johnson*, 2009-NMSC-049, ¶¶ 10-11 (concluding that the ordinary meaning of "school employee" applied where the term was not defined in the relevant statutory section or elsewhere in the Criminal Code).

**{23}** "Diagnostic" means "[o]f, relating to, or used in a diagnosis." *Am. Heritage Dictionary of the English Language* 500 (4th ed. 2000). "Diagnosis" is "[t]he act or process of identifying or determining the nature and cause of a disease or injury through evaluation of patient history, examination, and review of laboratory data." *Id.* Additionally, "treatment" is defined in pertinent part as the "[a]dministration or application of remedies to a patient or for a disease or injury; medicinal or surgical management; therapy." *Id.* at 1838. Counselor Aides at the Four Winds PCU identify issues associated with detoxification, and they are also instructed regarding the past medical history of specific clients. Counselor Aides also question clients regarding their medical history, talk to clients about their drinking behavior and its consequences, take vital signs, and perform various laboratory testing. After clients have been at the PCU for twenty-four hours, formal assessments are completed and treatment plans are developed. Treatment may include prescribing and dispensing medication as well as behavioral therapy. We conclude that the ordinary meaning of "diagnostic and treatment center" includes the Four Winds PCU because the PCU identifies substance abuse issues based upon patient history, laboratory testing, and formal assessments and then develops treatment plans based upon those observations.

**{24}** We also look to related provisions of the DRA to determine whether facilities such as the Four Winds PCU are traditionally viewed as diagnostic and treatment centers. *See Johnson*, 2009-NMSC-049, ¶ 16 (examining related provisions of the Administrative Code

7

to determine whether school guards are traditionally viewed as "school employees" when determining the ordinary meaning of statutory language). Tsosie was admitted to the Four Winds PCU pursuant to the DRA, that provides that "[a]n intoxicated or incapacitated person may be committed to a *treatment facility*." Section 43-2-8(A) (emphasis added). The DRA provides definitions for both "treatment" and "treatment facility." Section 43-2-2(L), (M). According to Section 43-2-2(L), "treatment" is defined to include "the broad range of emergency, outpatient, intermediate[,] and inpatient services and care, including *protective custody*, diagnostic evaluation, medical, psychiatric, psychological and social service care, vocational rehabilitation and career counseling, which may be extended to alcohol-impaired, drug-impaired[,] and intoxicated persons[.]" (Emphasis added.) Section 43-2-2(M) defines "treatment facility" to include:

> (1)     an institution under the supervision of the [D]epartment and approved by the [D]epartment for the care and treatment of alcohol-impaired persons or drug-impaired persons;

> (2)     a public institution approved by the [D]epartment for the care and treatment of alcohol-impaired persons or drug-impaired persons, but not specifically under the supervision of the [D]epartment; *or*

> (3)     *any other facility* that provides *any of the services* specified in the [DRA] and is licensed by the [D]epartment for those services.

(Emphasis added.)

**{25}**     The Four Winds PCU falls within the meaning of "treatment" as defined by the DRA. Section 43-2-2(L) specifically includes "protective custody" as one of the services that constitutes "treatment." It is undisputed that the Four Winds PCU was a "protective custody" unit. It is also undisputed that Tsosie was brought to the PCU for the purposes of protective custody and detoxification because he was alcohol-impaired. Based on the plain meaning of Section 43-2-2(L), the services provided to Tsosie at the PCU clearly constituted "treatment" as defined by the DRA.

**{26}**     Furthermore, the PCU constitutes a "treatment facility" under the definition provided by the DRA. Under Section 43-2-2(M), a treatment facility is an institution that provides *any* of the services enumerated in the DRA and is licensed by the Department for those services. As previously discussed, the PCU provides protective custody to alcohol-impaired persons, a service which is specifically enumerated in the DRA's definition of "treatment." Section 43-2-2(L). Furthermore, it is undisputed that Four Winds is licensed by the Department as an adult residential health facility. Because the Four Winds PCU provides enumerated services and is licensed by the Department for those services, we conclude that the Four Winds PCU meets the definition of "treatment facility" as defined by the DRA. Based upon the ordinary meaning of a "diagnostic and treatment center" and the DRA's traditional inclusion of facilities such as the PCU in the definition of a "treatment facility,"

we conclude that the Four Winds PCU constitutes a "health facility" for purposes of the battery upon a health care worker statute.

**{27}**    Tsosie argues that the Four Winds PCU is not a health facility because it is not a hospital or outpatient facility in its capacity as a protective custody facility.  Section 30-3-9.2(A)(1) defines a health facility as "a public or private hospital, outpatient facility, diagnostic and treatment center, rehabilitation center[,] *or* infirmary."  (Emphasis added.) The Legislature's use of the word "or" indicates that any of the listed definitions brings a facility within the definition of a health facility.  *See State v. Johnson*, 2001-NMSC-001, ¶ 30, 130 N.M. 6, 15 P.3d 1233 (stating that as a rule of statutory construction, the word "or" should be given its normal disjunctive meaning unless the context of the statute demands a different meaning).  As a result, we conclude that the Four Winds PCU is a health facility because it meets the definition of a diagnostic and treatment center, regardless of whether it meets the additional definitions under the statute.

**{28}**    Finally, Tsosie argues that the Four Winds PCU is not a health facility because it is licensed as an adult residential care facility and therefore is a long-term residential care facility excluded under the definition of a health facility under Section 30-3-9.2(A)(1).  This argument is unconvincing, as the undisputed testimony indicated that the PCU is not a long-term treatment facility because clients are not permitted to stay beyond a maximum of twelve days.  Additionally, if clients wish to be referred to long-term treatment upon their release from the PCU, then additional assessments must be completed.  As a result, the undisputed testimony established that the Four Winds PCU is not a long-term residential care facility.

**{29}**    Based upon the ordinary meaning of a "diagnostic and treatment center" and the DRA's traditional consideration of facilities such as the PCU as treatment facilities, we hold that the Four Winds PCU constitutes a "health facility" under Section 30-3-9.2(A)(1).  As a result, Albo qualifies as a health care worker under Section 30-3-9.2(A)(2) because he was employed at Four Winds at the time of the alleged incident.

**The Battery Upon a Health Care Worker Statute Is Not Unconstitutionally Vague**

**{30}**    Tsosie argues that Section 30-3-9.2(A) and (E) are unconstitutionally vague. Specifically, Tsosie contends that the imprecise definition of "health facility" in Section 30-3-9.2(A)(1) provides no notice to a reasonable person that an employee of a detoxification facility's protective custody unit is a "health care worker" and that such a person is afforded special protection against battery.

**{31}**    We review a vagueness challenge to the constitutionality of a statute de novo in light of the particular facts of the case and the conduct prohibited by the statute.  *State v. Smile*, 2009-NMCA-064, ¶ 17, 146 N.M. 525, 212 P.3d 413, *cert. quashed*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182.  This Court applies a two-part test for vagueness, considering whether the statute (1) "fails to provide persons of ordinary intelligence using ordinary common sense a fair opportunity to determine whether their conduct is prohibited[,]" or (2)

"fails to create minimum guidelines for . . . enforcement . . . [and thus] encourages subjective and ad hoc application [of the law]." *State v. Jacquez*, 2009-NMCA-124, ¶ 6, 147 N.M. 313, 222 P.3d 685. Tsosie bears the burden of overcoming the strong presumption of a statute's constitutionality by proving that Section 30-3-9.2 is unconstitutional beyond all reasonable doubt. *State v. Laguna*, 1999-NMCA-152, ¶ 24, 128 N.M. 345, 992 P.2d 896. Furthermore, if the statute clearly applies to Tsosie's conduct, he cannot succeed on his claim of vagueness. *Jacquez*, 2009-NMCA-124, ¶ 6. On appeal, Tsosie disputes only that the statute provides fair notice of the prohibited conduct, so we do not address whether the statute creates any potential for discriminatory and arbitrary enforcement. *See State v. Torres*, 2005-NMCA-070, ¶ 34, 137 N.M. 607, 113 P.3d 877 (stating that this Court will not address issues not briefed, argued, or supported by authority).

**{32}** "A statute may be void for vagueness if its meaning is so uncertain that the court is unable, by the application of known and accepted rules of construction, to determine what the Legislature intended with any reasonable degree of certainty." *State v. Castillo*, 2011-NMCA-046, ¶ 22, 149 N.M.536, 252 P.3d 760, (alterations omitted) (internal quotation marks and citation omitted), *cert. denied*, 2011-NMCERT-___, ___ N.M. ___, ___ P.3d ___ (No. 32,913, Apr. 13, 2011). We have concluded above that the Four Winds PCU constitutes a "health facility" under the plain meaning of Section 30-3-9.2(A)(1). Because we were able to determine the statutory meaning using accepted principles of statutory construction, we conclude that Section 30-3-9.2 is not unconstitutionally vague. *See Castillo*, 2011-NMCA-046, ¶ 22 (holding that the statute prohibiting fraudulent use of a debit card was not unconstitutionally vague because this Court was able to determine legislative intent using established statutory construction principles). We hold that Section 30-3-9.2(A)(1) and (E) are sufficiently definite to provide fair warning to a reasonable person that a battery upon an employee of a health facility, such as the Four Winds PCU, would result in prosecution for battery upon a health care worker.

**CONCLUSION**

**{33}** For the foregoing reasons, we affirm the district court's denial of Tsosie's motion to dismiss. Accordingly, the district court did not err by accepting Tsosie's plea and sentencing him to a conditional discharge with probationary supervision.

**{34}** **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

10

**MICHAEL E. VIGIL, Judge**

**Topic Index for *State v. Tsosie*, No. 30,070**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-VO | Vague or Overbroad |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-BA | Battery |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PB | Probation |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |