The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: **October 31, 2025**

**No. A-1-CA-41478**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.

**MELVIN JOHN BILLEY,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellant

Bennet J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**IVES, Judge.**

{1}     The State appeals the district court's order suppressing evidence that was seized as a result of the investigative detention of Defendant Melvin John Billey for a violation of the Motor Vehicle Code, NMSA 1978, §§ 66-1-1 to -8-141 (1931, as amended through 2025). The district court concluded that the arresting officer did not have reasonable suspicion to seize Defendant for violating Section 66-3-707(A) by riding a bicycle at night without a rear reflector. The district court provided two alternative rationales. First, it concluded that Section 66-3-707(A) applies only to bicycles ridden in areas reserved for vehicular travel, and that sidewalks are not such an area. We disagree and hold that our Legislature intended to require bicycles to have rear reflectors and headlights when used on sidewalks at night. Second, the district court concluded that an officer may only form reasonable suspicion of a violation of Section 66-3-707(A) if the officer was able to observe the bicycle from directly behind it, and that the arresting officer in this case was never in a position to do so. We believe that the manner in which the district court applied the statute is overly rigid in the context of a determination about whether reasonable suspicion warranted an investigatory detention. Because neither of the district court's rationales support its suppression order and because we decline Defendant's request to affirm that order as right for any reason, we reverse the order. We remand for

further proceedings on Defendant's motion to suppress consistent with this opinion, and for any additional proceedings that may be appropriate.

**BACKGROUND**

{2} Officer Jarame Gordon observed a person who he believed was riding a bicycle on a sidewalk at night without a rear reflector, and the cyclist then turned into the Farmington Inn parking lot. The officer entered the parking lot and eventually found a bicycle flipped upside down outside of one of the motel rooms. Officer Gordon observed that the bicycle did not have a rear reflector. Defendant then exited a nearby room, at which point the officer confronted him, explaining that Defendant was required to have a rear reflector on his bicycle. Defendant responded that he had only been riding in the parking lot. When asked to provide identification, Defendant provided a fake name, and Officer Gordon arrested him for concealing his identity. During a search incident to arrest, officers found a fentanyl pill and a metal pipe. The State charged Defendant with concealing his identity, possession of a controlled substance, and possession of drug paraphernalia, as well as operating a bicycle without lamps or other equipment in violation of Section 66-3-707(A).

{3} Defendant moved to suppress the evidence obtained from the stop, arguing that he was biking on a sidewalk, not "on a roadway," and therefore was not required to have a rear reflector. Because Defendant maintained that he was not in violation of any law, he argued that Officer Gordon had no reasonable suspicion to stop him.

After an evidentiary hearing, the district court granted Defendant's motion on two grounds. First, it concluded that Section 66-3-707(A) applies to bicycles "operated upon an highway or path set aside for bicycles"; "[a] sidewalk does not fall within the definition of highway" because highway is defined as an area "generally open to the use of the public . . . for the purpose of vehicular travel"; and "the [L]egislat[ure] did not intend for motor vehicles to be driven on sidewalks." Second, it concluded that Officer Gordon lacked reasonable suspicion because he "was never directly behind . . . the bicycle" and therefore could not "determine whether . . . Defendant was in violation of the statute." The State appeals.

**DISCUSSION**

{4}     When an appeal of a suppression ruling involves "a mixed question of law and fact," *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted), we review "factual matters with deference to the district court's findings if substantial evidence exists to support them," and we review de novo the "the district court's application of the law." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. Because we resolve this appeal without addressing any factual questions and our holdings address only legal questions, our review is de novo. *See State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50 (recognizing that the standard of review for legal questions is de novo).

**{5}** Under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution, before an officer makes a traffic stop, they "must have a reasonable suspicion of illegal activity."[1] *State v. Moseley*, 2014-NMCA-033, ¶ 9, 320 P.3d 517. Reasonable suspicion exists "if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted).

**{6}** We divide our analysis into three parts. First, we explain why we decline to affirm the suppression order under the right for any reason doctrine. Second, we explain why we disagree with the district court's conclusion that Officer Gordon lacked reasonable suspicion because Section 66-3-707(A) does not apply to bicycles ridden on sidewalks. Third, we explain why we disagree with the district court's legal conclusion that an officer can only develop reasonable suspicion of a violation of the rear reflector requirement by observing the bicycle from directly behind it.

---

[1]Defendant mentions the search and seizure provision of our state constitution, but he does not argue that it affords greater protection than its federal counterpart. We therefore assume without deciding that both constitutions guarantee the same protection in the context of investigatory detentions. *See State v. Ochoa*, 2004-NMSC-023, ¶ 6, 135 N.M. 781, 93 P.3d 1286.

## I. We Will Not Affirm the District Court's Decision as Right for Any Reason

{7} Defendant argues that we should affirm the district court as right for any reason because: (1) there was an "insufficient factual basis to infer" that the cyclist seen by Officer Gordon was Defendant; and (2) Officer Gordon improperly detained Defendant for a penalty assessment misdemeanor, § 66-3-701(A), under the balancing test outlined in *State v. Wright*, 2022-NMSC-009, ¶ 27, 503 P.3d 1161. We decline to apply the right for any reason doctrine because, as we will explain, the doctrine does not apply to the fact-dependent arguments presented by Defendant for the first time on appeal.

{8} The doctrine permits affirmance on a basis not relied upon by the district court if the result reached by the district court "was right for any reason, as long as the arguments in favor of affirmance are not fact based such that it would be unfair to entertain them for the first time on appeal without notice to the appellant." *See State v. Granville*, 2006-NMCA-098, ¶ 12, 140 N.M. 345, 142 P.3d 933. "[I]t is improper for an appellate court to apply the doctrine to unpreserved arguments where the party opposing its application had no opportunity in the district court to respond to the unasserted argument." *State v. Marquez*, 2023-NMSC-029, ¶ 32, 539 P.3d 303 (internal quotation marks and citation omitted). As a consequence, "appellate courts usually apply the [doctrine] to strictly legal questions." *Id.* (alteration, quotation marks, and citation omitted).

{9}      These limitations on the applicability of the doctrine preclude us from affirming based on either of Defendant's arguments. *See id.* ¶¶ 32, 35. As to Defendant's first argument—that the evidence did not establish that Defendant was the cyclist observed by Officer Gordon—Defendant acknowledges that "the parties all appeared to take for granted that [Defendant] was the original cyclist." Because Defendant never argued in the district court that Officer Gordon lacked reasonable suspicion to believe that Defendant was the person riding the bicycle, the State had no notice of any need to present evidence on that topic. *Cf. State v. Goss*, 1991-NMCA-003, ¶ 13, 111 N.M. 530, 807 P.2d 228 ("Generally, motions to suppress must set out with particularity the grounds relied on for the relief sought."); *State v. Ponce*, 2004-NMCA-137, ¶ 7, 136 N.M. 614, 103 P.3d 54 (recognizing that if the defendant carries the burden of "com[ing] forward with evidence to raise an issue as to an illegal search and seizure," then the state bears the burden of rebutting the defendant's prima facie case). It would therefore be unfair to the State for us to affirm the suppression order on the basis that the State did not present evidence to establish reasonable suspicion that Defendant was the cyclist, *see Marquez*, 2023-NMSC-029, ¶¶ 32, 35, and we decline to do so.

{10}     For similar reasons, we decline to affirm the suppression order based on Defendant's argument—made for the first time on appeal—that Officer Gordon ran afoul of *Wright* by detaining Defendant to investigate a possible traffic offense after

losing sight of Defendant. Defendant appears to assume that *Wright* applies to investigative detentions as well as arrests. We need not determine whether this assumption is correct because even if *Wright* does apply here, the right for any reason doctrine does not. Because the defense chose not to make any argument based on *Wright* in the district court, the State lacked notice of the need to present evidence pertinent to the fact-driven question about whether the intrusion on Defendant's privacy interest was outweighed by the State's need to detain Defendant to promote a legitimate government interest. *See Wright*, 2022-NMSC-009, ¶¶ 27-34. Affirming based on *Wright* would be unfair to the State, and we will not do so.

## II. Section 66-3-707(A) Applies to Bicycles Ridden on Sidewalks

{11}     Whether Section 66-3-707(A) applies to bicycles ridden on sidewalks is a question of statutory interpretation. In answering that question, our task is to identify the intent of our Legislature, and we therefore begin with the plain meaning of the words that our Legislature chose to include in the statute. *See Ferlic v. Mesilla Valley Reg'l Dispatch Auth.*, ___-NMSC-___, ¶ 10, ___ P.3d ___ (S-1-SC-40162, Apr. 21, 2025). If those words are "clear and unambiguous," we honor their plain meaning. *Duhon*, 2005-NMCA-120, ¶ 10. When interpreting the statutory text, we strive to ensure that "no part of the statute is rendered surplusage or superfluous." *State v. Adams*, 2022-NMSC-008, ¶ 10, 503 P.3d 1130 (internal quotation marks and citation omitted). And where, as here, the question involves multiple provisions of the same

statutory scheme, we consider the scheme holistically, "construing each section or part in connection with every other part or section so as to produce a harmonious whole." *State v. Baca*, 2005-NMCA-001, ¶ 9, 136 N.M. 667, 104 P.3d 533 (text only) (citation omitted).

{12}    In this case, all of the relevant statutes are in the Code, and the key statute at issue, Section 66-3-707(A), is among several in a part of the Code that is dedicated to the regulation of bicycles. The first section in this part of the Code is critical here because it includes a provision that explains how to determine whether each specific regulation applies to a bicycle that is used in a particular area. The plain language of that provision, Section 66-3-701(C), describes a general rule with specific exceptions: "The[] regulations applicable to bicycles apply whenever a bicycle is operated upon any highway or upon any path set aside for the exclusive use of bicycles subject to those exceptions stated in Sections 66-3-701 through 66-3-707." The subsequent sections of the bicycle statutes include various prohibitions and requirements, including the headlight and reflector requirements in Section 66-3-707(A):

> Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least five hundred feet to the front and with a red reflector on the rear of a type approved by the division which shall be visible from all distances from fifty feet to three hundred feet to the rear when directly in front of lawful upper beams of head lamps on a motor vehicle.

In order to determine whether these requirements apply to bicycles used on sidewalks, we must first figure out whether the requirements are governed by the general rule in Section 66-3-701(C)—making the requirements applicable to highways and paths set aside exclusively for bicycles—or instead are governed by an exception to the general rule. The State argues that an exception applies. Specifically, the State contends that the Legislature's use of "[e]very bicycle" in Section 66-3-707(A) tells us that the Legislature intended to require reflectors on bicycles no matter where they are being used.

{13}     We disagree. For reasons we will explain, we believe the State's reading would mute the general rule that our Legislature chose when it wrote Section 66-3-701(C); the general rule would not apply to a single one of the regulations. The State's reading is contrary to relevant canons of statutory interpretation, which require us to give the general rule in Section 66-3-701(C) and every other relevant statutory provision a voice—silencing none of them—while avoiding discord among those provisions. *See Adams*, 2022-NMSC-008, ¶ 10; *Baca*, 2005-NMCA-001, ¶ 9. And we hear full harmony in just one interpretation: The general rule governs the types of locations where a regulation applies, unless that regulation explicitly makes an exception by identifying a location other than highways and paths dedicated exclusively for bicycles. Stated differently, when a specific regulation says nothing

about the types of locations where it applies, then, under Section 66-3-701(C), the regulation applies to highways and paths dedicated exclusively to bicycles.

{14}    We are able to observe that this is how the statutory scheme works only by stepping back and looking at all of the relevant bicycle statutes together. *Baca*, 2005-NMCA-001, ¶ 9. This allows us to notice that each and every relevant statutory section falls into one of two categories. In the first category are the statutes that say nothing about where they apply. *See* §§ 66-3-703, -706, -707. In the second category are the statutes that explicitly specify that they apply in places that differ from the places listed in the general rule, *see* §§ 66-3-702, -704, -705, -709—that is, places other than "any highway or upon any path set aside for the exclusive use of bicycles."[2] Section 66-3-701(C). For example, Sections 66-3-702, 66-3-704, and 66-3-705 specify that they apply when a bicycle is used on a "roadway," which the Code defines differently than "highway." *Compare* § 66-1-4.8(B), *with* § 66-1-4.15(Q). This categorization requires us to reject the State's interpretation, under which neither category of statutes would be governed by the general rule enacted by our Legislature. The statutes in the first category would apply everywhere, and the statutes in the second category would apply in the places specified in those statutes. The general rule would govern nothing because every bicycle statute would create

---

[2] The only other section in the bicycle statutes, Section 66-3-708, is not relevant to the question before us because it pertains only to the labeling, modification, and functioning of electric bicycles.

an exception to that rule. Because the general rule in Section 66-3-701(C) would be superfluous under the State's reading, we reject that reading as contrary to the intent of our Legislature. We conclude instead that the general rule governs the statutes that say nothing about the locations where they apply, and the statutes that specifically state where they apply create the only exceptions to the general rule.

{15}     This brings us to the statute at issue in Defendant's case, which says nothing about where it applies and is therefore governed by the general rule in Section 66-3-701(C). As a consequence, Section 66-3-707(A) requires a sufficient reflector and a sufficient headlight for every bicycle that is used at nighttime on a highway or on a path dedicated exclusively for bicycles. Because the Code makes clear that a sidewalk is not a path dedicated exclusively for bicycles, *see* § 66-1-4.16(H), a narrow question of statutory interpretation remains: Did our Legislature intend for "highway" to include "sidewalk"? Yes is our answer based on the plain meaning of the text of the relevant statutes—a meaning that is aligned with the safety purpose of the headlight and reflector requirements.

{16}     We start with the text, which includes definitions that reveal our Legislature's intent. *See State v. Tsosie*, 2011-NMCA-115, ¶ 19, 150 N.M. 754, 266 P.3d 34. The Code defines "highway" and "street" interchangeably, in relevant part, as "every way or place generally open to the use of the public as a matter of right for the purpose of vehicular travel." Section 66-1-4.8(B). This definition encompasses

"sidewalk," which is defined as "a portion of street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for the use of pedestrians." Section 66-1-4.16(H). A straightforward reading of these definitions leads us to conclude that highways and streets include sidewalks, and that the headlight and reflector requirements apply to bicycles used on sidewalks at nighttime.

{17} The district court reached the opposite conclusion, reasoning that "highway" does not encompass "sidewalk" because the definition of "highway" includes the phrase "for the purpose of vehicular travel," § 66-1-4.8(B), and because "it is illegal for vehicles to be operated upon a sidewalk." We interpret the statutes differently. We do not believe that our Legislature—having chosen to explicitly include sidewalk in the definition of highway and street—simultaneously chose to implicitly exclude sidewalk from that definition. Said another way, we cannot conclude that our Legislature said one thing clearly but then suggested the opposite, all within its own definitions of the statutory terms. To presume that our Legislature enacted internally inconsistent definitions would bring unnecessary discord to a statutory scheme—a scheme that is in harmony when we adhere to our Legislature's choice to define sidewalk as part of highway and street.

{18} Consistent with that choice, and contrary to the district court's rationale, other provisions of the Code indicate that our Legislature intended for vehicles and

pedestrians to share the use of highways, including sidewalks, and that it did not intend to completely exclude vehicles from sidewalks. Although the definition of sidewalk includes the phrase "intended for the use of pedestrians," § 66-1-4.16(H), and the definition of "highway" and "street" includes the phrase "for the purpose of vehicular travel," § 66-1-4.8(B), we do not read these phrases to reserve highways for the exclusive use of vehicles or to categorically prohibit vehicles from using sidewalks. Neither of the definitional phrases explicitly imposes these restrictions, and we do not believe that our Legislature intended to imply any such restrictions because the Code indicates that vehicles sometimes use sidewalks and that highways and streets are not used only by vehicles. For example, the Code accounts for the reality that vehicles drive on sidewalks to cross them, *see* § 66-7-346, and that pedestrians cross streets and highways, *see* §§ 66-7-333, -334(A)-(B), -335. The Code also recognizes that when no sidewalk is provided, pedestrians and vehicles may both travel on the "roadway," § 66-7-339(B), even though "roadway" is defined as the "portion of a street or highway improved, designed or ordinarily used for vehicular travel." Section 66-1-4.15(Q). This confirms that a roadway, like a sidewalk, is part of the highway or street, and that a roadway, like a sidewalk, may lawfully be used by both vehicles and pedestrians, even though the roadway is ordinarily used by vehicles. In short, we do not think the Code, considered as a harmonious whole, can be reconciled with the district court's conclusion that

highways are only used by vehicles, and that vehicles may not be used on sidewalks.[3] Instead, the Code makes clear that vehicles and pedestrians share highways, including sidewalks.

{19}   This shared use of highways raises important questions: What was our Legislature's goal when it required cyclists to have a headlight and a rear reflector at night? And does applying those requirements to sidewalks achieve that goal? Although answering these questions is not strictly necessary because we see clarity in the statutory text, we answer them anyhow because we believe it is prudent to ensure that our understanding of the text is consistent with the purpose of the statute. *See State v. Vest*, 2021-NMSC-020, ¶ 20, 488 P.3d 626. When our Legislature enacted the Code, it intended "to prioritize safety," *State v. Farish*, 2021-NMSC-030, ¶ 17, 499 P.3d 622, and safety is the obvious purpose of Section 66-3-707(A). Common sense tells us that the whole point of requiring night riders to have a reflector in back and a light in front is to reduce the likelihood of accidents by increasing the likelihood that cyclists will be seen by and see others who are using

---

[3]The district court relied on two legal authorities that do not support its ruling, in our view. The first, a provision of the Farmington Municipal Code, does not provide any information about the intent of the New Mexico Legislature when it enacted the Motor Vehicle Code. Although the second—Section 66-7-351(A)(1)—is part of the Code, it does not suggest that motor vehicles are categorically barred from using sidewalks. Instead, this provision permits vehicles to stop, stand, and park on sidewalks under certain circumstances; this is consistent with other Code provisions cited in the text of this opinion, which recognize that vehicles may sometimes be used lawfully on sidewalks.

the highway. This purpose is served by adhering to the plain meaning of the definitions, which tell us that reflectors and headlights are required when bicycles are used on sidewalks at night. Safety is increased if cyclists are able to see and be seen by other people who are using the sidewalk, including other cyclists and pedestrians as well as drivers of motor vehicles who are crossing the sidewalk in order to exit or enter the roadway. Safety is also increased in situations where cyclists leave the sidewalk and enter the roadway. For example, at an intersection, a cyclist riding on a sidewalk might need to cross the roadway. In such instances, a reflector and a headlight increase safety for the cyclist, and for people traveling through the intersection in motor vehicles and other vehicles, as well as people on foot. For these reasons, we believe that our Legislature's purpose is achieved by honoring the plain meaning of the text of the relevant statutes and concluding that the rear reflector and headlight requirements apply to every bicycle that is used on a sidewalk at night.

{20} We therefore hold that the sidewalk, where Officer Gordon believed he observed Defendant riding a bicycle at night, is part of the highway and that Section 66-3-707(A), including its rear reflector requirement, therefore applies. This holding requires us to proceed further and consider the district court's alternative rationale.

**III.    Reasonable Suspicion to Investigate a Possible Rear Reflector Violation**

{21}    The district court concluded that the State could not establish reasonable suspicion because "Officer Gordon was never directly behind" Defendant and therefore could not "determine whether . . . Defendant was in violation of the statute." The State argues that an officer does not necessarily need to be directly behind a bicycle in order to develop reasonable suspicion. We agree. In our view, the district court applied the language of Section 66-3-707(A) too rigidly in ruling on the motion to suppress, in which the question was whether Officer Gordon had reasonable suspicion to detain Defendant to investigate a possible violation of the statute.

{22}    The district court relied on the statute's requirement that bicycles ridden at night must have "a red reflector on the rear of a type approved by the division which *shall be visible from all distances from fifty feet to three hundred feet to the rear when directly in front of lawful upper beams of head lamps on a motor vehicle*." Section 66-3-707(A) (emphasis added). A person may violate the statute by not having a reflector at all or by having a reflector that does not meet the color and reflectivity requirements set by our Legislature. With this in mind, the question for the district court should have been whether all of the observations made by Officer Gordon before the detention of Defendant began gave him a reasonable suspicion that Defendant either had no reflector or had an insufficient reflector—that is, a

justification to detain Defendant "to investigate *possible* criminal activity." *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (emphasis added) (internal quotation marks and citation omitted).

{23} To justify an investigatory stop, the State was not required to prove a violation of the statute beyond a reasonable doubt or by a preponderance of the evidence, *see Alabama v. White*, 496 U.S. 325, 329-30 (1990), and the State was not even required to establish probable cause that the statute was violated, *see State v. Yazzie*, 2016-NMSC-026, ¶ 18, 376 P.3d 858. Indeed, "[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *White*, 496 U.S. at 330. Importantly, reasonable suspicion may exist even if "ambiguous circumstances could reasonably be construed as involving either lawful or unlawful activity," which means that the law did not require Officer Gordon's observations to "rule out the possibility of innocent conduct." *See Yazzie*, 2016-NMSC-026, ¶ 22 (internal quotation marks and citation omitted).

{24} We do not believe that these Fourth Amendment principles can be reconciled with the rigid manner in which the district court applied the statute's reflectivity requirement in the context of Defendant's suppression motion. It is, of course, true

that if Defendant were on trial for violating the statute, and if the evidence were that his bike had a red reflector, the State would have been required to prove that the reflector was not reflective enough to meet the specific statutory requirements—that is, it was not visible from distances of between 50 and 300 feet "when directly in front of lawful upper beams of head lamps on a motor vehicle." Section 66-3-707(A). But less was required of the State here because this was a suppression hearing during which the issue was whether Defendant's detention was warranted for the purpose of investigating the *possibility* that Defendant was riding without a reflector or with a reflector that was not reflective enough. *See Jason L.*, 2000-NMSC-018, ¶ 20. Specifically, the State was required to prove that, at the time Defendant's detention began, a person of reasonable caution would believe that the bicycle either had no reflector at all or had a reflector that was inadequate, considering objectively all of the observations made by Officer Gordon—from whatever vantage points he had and with the light available from his headlights and any other available sources— together with rational inferences supported by those observations.[4] *See Hubble*, 2009-NMSC-014, ¶ 8. This requires the State to establish a "particularized" and

---

[4]The lawfulness of an investigatory detention hinges on whether reasonable suspicion existed at the time the detention began. *See State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. However, it is unclear from the record when the district court believed that the detention of Defendant began or whether the district court believed that any of the observations made by Officer Gordon after he located a bicycle sitting outside of the hotel room—including that it had no rear reflector at all—were pertinent and, if they were, whether they were credible.

"articulable suspicion" that Defendant violated the law; "[u]nsupported intuition and inarticulate hunches" fall short. *See Jason L.*, 2000-NMSC-018, ¶ 20 (internal quotation marks and citation omitted). But neither the Fourth Amendment nor the statute require that the content and reliability of the observations rule out the innocent activity of riding with an adequate reflector. *See White*, 496 U.S. at 330; *Yazzie*, 2016-NMSC-026, ¶ 22. In other words, the observations made by Officer Gordon do not *necessarily* fall short if ambiguity remains about whether the bicycle had a reflector at all or whether any reflector that it might have had was sufficiently reflective. *See Yazzie*, 2016-NMSC-026, ¶ 22. This means that the State was not required to show that, before Officer Gordon initiated the investigatory stop, he was driving directly behind the bicycle and therefore able to observe that the statute was, in fact, being violated.

{25} For these reasons, we hold that the alternative rationale offered by the district court does not support its suppression ruling.[5] To be clear, this holding and our holding regarding the interpretation of the statute address only the rationales for suppression included in the district court's order. Whether Officer Gordon had reasonable suspicion when the investigative detention of Defendant began is a

---

[5]Our holding regarding the legal component of the district court's rationale makes it unnecessary for us to address the State's argument that substantial evidence does not support the district court's factual finding that Officer Gordon was never directly behind the bicycle.

determination that we have not made and cannot make because it involves factual questions answerable only by the district court. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (recognizing that appellate courts do not resolve factual questions).

**CONCLUSION**

{26}    We reverse and remand for further proceedings consistent with this opinion.

{27}    **IT IS SO ORDERED.**


_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**


_____
**SHAMMARA H. HENDERSON, Judge**


_____
**JANE B. YOHALEM, Judge**